Dino Eugene **FULLER** and Brenda Darlene **Williams**, Appellants,

v.

**STATE** of Texas, Appellee.

Nos. 11–91–120–CR, 11–91–121–CR.

Court of Appeals of Texas, Eastland.

July 30, 1992.

Discretionary Review Refused in No. 11–91–121–CR Nov. 25, 1992.

Jeff L. Haas, Tyler, for Brenda Darlene Williams.

William M. Routon, Tyler, for Dino Eugene Fuller.

Jack Skeen, Jr., Crim Dist. Atty., Tyler, for appellee.

## OPINION

McCLOUD, Chief Justice.

The jury convicted Dino Eugene Fuller [1] and Brenda Darlene Williams,[2] co-defendants tried jointly, of the offense of murder. The jury assessed punishment for Fuller at confinement for 25 years and for Williams at confinement for 35 years. We affirm.

On November 14, 1988, Fuller notified the Smith County Sheriff's Department that he and Williams, his mother, discovered the victim's body on the floor of the victim's home. The victim was the husband of Williams and the step-father of Fuller. Fuller and Williams gave statements to officers that morning, in which they each insisted they did not know who might have shot and killed the victim.

The next day, Fuller and Williams met with attorney Bill Frizzell. They discussed with Frizzell their participation in the shooting. They then left Frizzell's office and retrieved the guns used in the shooting. After they left, Frizzell contacted the sheriff's department, and officers came to Frizzell's office. Frizzell told them that appellants had shot the victim in self-defense. Later the same day, Frizzell and appellants went to the sheriff's department to turn in the weapons, to waive the necessity of arrest warrants, and to seek a recommendation from the sheriff's department for low bail bonds. At the sheriff's department, Frizzell again made brief references to the facts of the shooting. At trial, the court permitted the State, over appellants' objections, to introduce into evidence certain information that Frizzell told the officers.

Appellants have filed identical briefs. In three points of error, appellants contend that the trial court erred in permitting testimony based upon privileged attorney-client conversations between appellants and Frizzell because the conversations were not within any of the exceptions to the privilege and because the privilege had not been waived.

The trial court conducted a hearing outside the jury's presence regarding appellants' assertion of attorney-client privilege. The State expressly did not seek to delve into attorney-client conversations in Frizzell's office between appellants and Frizzell privately; it only elicited testimony concerning conversations published to third parties, urging a waiver of attorney-client privilege. Appellants contend that the privilege was not waived because appellants did not authorize the disclosures by Frizzell to the officers.

■ The attorney-client privilege, set out in TEX.R.CRIM.EVID. 503(b), prohibits disclosure of confidential communications and prohibits disclosure of "any other fact which came to the knowledge of the lawyer ... by reason of the attorney-client relationship." TEX.R.CRIM.EVID. 511, however, provides that the privilege is waived if the holder of the privilege "voluntarily discloses or consents to disclosure of any significant part of the privileged matter." If a fact issue is raised as to waiver of privilege, the party asserting the privilege has the burden of disproving the waiver or establishing the limited scope of the waiver. *Jordan v. Court of Appeals for the Fourth Supreme Judicial District*, 701 S.W.2d 644 (Tex.1985); *State ex rel. Simmons v. Peca*, 799 S.W.2d 426 (Tex.App.— El Paso 1990, no pet'n). The court in *Burnett v. State*, 642 S.W.2d 765 at 770 (Tex. Cr.App.1982), stated:

The law is "perfectly plain that the waiver [of the client-attorney privilege], like the privilege, belongs solely to the client, and not to the attorney." 8 Wigmore (McNaughton Revision) § 2327. "Since ... it is the client who is the holder of the privilege, the power to waive it is his, and he alone, or his attorney or agent *acting with his authority*, may exercise this power." E. Cleary, McCormick's Handbook of the Law of Evidence 194 (2d ed. 1972). (Emphasis in original)

---

1. Cause No. 11–91–120–CR.

2. Cause No. 11–91–121–CR.

Frizzell disclosed to officers facts that he learned by reason of the attorney-client relationship. The trial court ruled at the conclusion of the hearing that appellants waived their privilege by voluntarily consenting to Frizzell's disclosure of the information, both in his office and in the sheriff's office.

At the hearing concerning waiver of the attorney-client privilege, Frizzell testified that one of the concerns was the amount of the bond. The victim had died of multiple gunshot wounds, a fact that would have been considered in setting bonds. Appellants were not wealthy people. The entire purpose behind all of the conversations, the surrendering of the guns, and the waiving of the requirement for arrest warrants was to negotiate for lower bonds and to save the sheriff's office both investigation time and expense.

Frizzell testified that in his first conversation with sheriff's deputies, outside appellants' presence, he stated appellants' position and version of facts, although such conversation was not "expressly" authorized by appellants. Frizzell considered that it was his role and job to act as an advocate on appellants' behalf to try to convince the sheriff's department "what in actuality happened." Later that day, appellants brought him two guns in a paper sack. Frizzell then accompanied appellants to the sheriff's department where Frizzell delivered the bag containing the guns to the officers. Before making the trip to the sheriff's office, Frizzell discussed with appellants his prior conversation with officers about the bonds and the waiver of the arrest warrants. He also discussed with appellants their surrendering before a magistrate. Appellants understood that he had discussed some of the facts with the sheriff's department that appellants had related to Frizzell.

At the sheriff's office, Frizzell again discussed with the officers that appellants shot the victim in self-defense. Frizzell testified that the conversation took place in a small office next to where appellants waited. Frizzell stated that all the offices had open doors and that his clients could have overheard the conversation. As Frizzell made these statements to the officers, appellants did not interrupt him or disagree with him. Frizzell described appellants as very much aware of what was going on and testified that "they were listening to my advice and following my advice in whatever we did."

Deputy Sheriff Jason Waller testified that Frizzell telephoned him the morning of November 15. Together with Lieutenant Greg Wilson and Chief Deputy Johnny Beddingfield, he went to Frizzell's office for a 10 to 20 minute discussion. Later that day, Frizzell came with appellants to the sheriff's office. Frizzell handed him a brown paper sack containing two firearms and told him that the guns had been in a ditch on the side of a highway. Appellants were with Frizzell in Wilson's office when Frizzell repeated in front of appellants a brief synopsis of the information Frizzell had earlier given the officers in Frizzell's office: that Fuller and the victim struggled over a gun, that the gun discharged, and that Williams fired a different gun at the victim in defense of Fuller, thinking that Fuller had been shot. Frizzell told officers that the two guns delivered were the guns used in the shootings.

Waller testified that all of the statements Frizzell made at the sheriff's office were made in the presence of appellants. Waller looked at appellants as Frizzell was relating some of the facts. They sat there and seemed to be cooperating. They did not appear to have any disagreement about what Frizzell was saying.

Officer Wilson testified that in the 15-minute meeting at Frizzell's office, Frizzell told Wilson and other officers about the facts of the shooting. Frizzell told them that appellants had gone to retrieve the weapons that they had thrown out on the side of the road and that appellants wanted to get something "off their chest." Later that day, Frizzell and appellants came to the sheriff's office. Frizzell handed Waller a brown paper sack and stated that these were the two weapons involved. Wilson testified that appellants were in Frizzell's presence in Wilson's office when Frizzell

briefly related to Deputies Waller and Wilson that the shooting was in self-defense.

 The evidence supports the trial court's finding that, even if not expressly authorized, appellants consented to Frizzell's disclosures, both in Frizzell's office and at the sheriff's office, of facts Frizzell learned by reason of the attorney-client relationship. We find that appellants did not meet their burden of disproving a waiver of the attorney-client privilege. Accordingly, the trial court did not err in ruling that under Rule 511 appellants had waived their attorney-client privilege.

*Cruz v. State*, 586 S.W.2d 861 (Tex.Cr. App.1979), cited by appellants is distinguishable. There, the defendant's attorney prepared a statement in the attorney's "own words" for the defendant's signature. The attorney had the defendant sign the statement without permitting the defendant to read the statement. The attorney then gave the statement to the police. The attorney testified that, at the time the defendant signed the statement, the defendant did not know that the attorney intended to deliver the statement to the police.

The court in *Cruz* held that the record did not support the State's contention that the defendant "knowingly" consented to the attorney's delivering the statement to the police. The court noted that, at some time after signing the statement, the defendant knew that the attorney intended to give the statement to the police. However, in holding that the defendant had not waived the attorney-client privilege, the court said:

> [T]his knowledge was gained after the statement had already been prepared, and appellant's silent, unavoidable acquiescence to [the attorney's] decision will not support a legal conclusion that this conduct was a knowing consent to waiver.

In the instant case, we do not have an "unavoidable acquiescence." The record reflects that appellants consented to Frizzell's disclosure to the officers as a defense strategy to establish self-defense and to gain a recommendation for lower bail bonds. Appellants accompanied Frizzell to the sheriff's department to deliver the guns. They were present when Frizzell gave a brief recitation of the facts to Deputy Waller. Appellants appeared to be cooperating and did not indicate any disagreement with what Frizzell was saying. Appellants waived the issuance of arrest warrants and appeared before a magistrate. The third point of error is overruled.

Our holding as to the third point makes consideration of the remaining two points concerning the attorney-client privilege unnecessary. The judgments of the trial court are affirmed.