**Preciliano CARMONA, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 1066–94.**

Court of Criminal Appeals of Texas, En Banc.

March 26, 1997.

Keith Hampton, Austin, for appellant.

John Bradley, Asst. District Attorney, Georgetown, Matthew Paul, State's Atty., Austin, for State.

Before the court en banc.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

McCORMICK, Presiding Judge.

A jury convicted appellant of three counts of aggravated sexual assault of a child and one count of indecency with a child. The jury assessed punishment at sixty years' confinement and a $7,000 fine on the aggravated sexual assault convictions and twenty years' confinement and a $3,000 fine on the indecency with a child conviction with the sentences of confinement running concurrently. The Court of Appeals affirmed the convictions and sentences. *Carmona v. State*, 880 S.W.2d 227, 237 (Tex.App.—Austin 1994).

The record reflects that after the State presented its casein-chief, appellant took the stand and denied committing any offense. During his cross-examination of appellant, the prosecutor made it known that he intended to present as rebuttal the testimony of Barton who had conducted a defense-sponsored polygraph examination of appellant shortly after appellant's arrest. Among other things, Barton was to testify from some notes he made about various· incriminatory statements appellant made to him during Barton's pretest interview of appellant.[1] Appellant claimed Barton's testimony was inadmissible because it and his notes were protected by the attorney-client privilege.

The trial court conducted a hearing outside the presence of the jury on appellant's objection to Barton's testimony based on the attorney-client privilege. The evidence from this hearing is undisputed. It shows appellant's lawyer hired Barton to conduct the polygraph examination. Barton conducted a pretest interview of appellant during which appellant made various incriminatory statements to Barton. Barton took notes from this interview. These notes contained the incriminatory statements appellant made to Barton.

Barton conducted the polygraph examination and concluded appellant "passed" the examination based on the specific questions Barton asked appellant. Barton prepared for appellant's lawyer a written report which contained only the "favorable" results of the polygraph examination. Barton's written report did not contain the incriminatory state-

1. Appellant characterizes these statements as confessions to other crimes which we note in- volves the same victim as the one alleged in this case.

ments appellant made to Barton during the pretest interview. However, Barton testified he informed appellant's lawyer of the incriminatory statements appellant made to him during the pretest interview.

Paul Womack, an assistant district attorney for Williamson County, testified appellant's lawyer sent him Barton's written report on appellant's case and two more reports in other sexual assault against children cases involving other defendants who were represented by appellant's lawyer. Womack testified appellant's lawyer's purpose in sending the reports and disclosing the results of the polygraph examinations was to persuade the district attorney's office to give some consideration to the "favorable" polygraph results in deciding whether to present the cases to a grand jury.

"Q. And did [appellant's lawyer] ever place any limitation upon the manner in which you could consider them?

"A. No. His comment to me, as we serially went through the cases, was that each one of these persons was innocent, each one of these cases should just be disposed of, either dismissed or closed out without prosecution, because of the favorable results of the polygraph examiner. And I grew more and more incredulous as we went through the cases, that his clients were having 100 percent pass rate with polygraph examiner, which is an unusual coincidence in my experience."

Bartlett, an employee with the Taylor Police Department, testified appellant's lawyer contacted her and informed her that appellant had "passed" a polygraph examination. Bartlett testified appellant's lawyer asked her to inform the district attorney's office of this development.

"Q. What was the conversation about?

"A. It was just that [appellant] had taken a polygraph by—Mike Barton, I believe, administered it—and had passed it.

"Q. And what did [appellant's lawyer] want you to do with that information?

"A. Let you all know about it, the District Attorney's office."

Bunte, a police officer with the Williamson County Sheriff's Department, testified appellant's lawyer had disclosed to her the results of polygraph examinations in other cases. She said appellant's lawyer's purpose in doing this was to persuade law enforcement authorities not to pursue charges against appellant's lawyer's clients. Bunte testified appellant's lawyer had been successful in doing this in some cases.

"Q. Okay. And has [appellant's lawyer] ever disclosed to you the results of polygraph examinations on defendants that you were investigating?

"A. Yes, sir.

"Q. Few or many occasions?

"A. On at least one that I can recall, recently.

"Q. Okay. On others?

"A. I believe in the past, yes, sir.

"Q. Okay. And, generally, what would he say when he would give you such a report?

"A. He would advise me that he had his client polygraphed and that he had passed the test and would make the official—the written report available to me.

"Q. And let me show you an example of a written report that has been admitted as State's Exhibit No. 1 and ask you if this looks similar to the types of reports that you have received from [appellant's lawyer] in the past.

"A. Yes, sir, it does.

"Q. Do you remember that particular one, ever seeing it?

"A. No, sir. I don't recall this particular one.

"Q. Okay. Has he given you others similar to that one?

"A. Yes, sir.

"Q. And what was your understanding of the purpose of receiving those reports?

"A. To make me aware that the polygraph had been administered and that the person who had taken the polygraph had passed it because I was pursuing the case either with Grand Jury or pursuing for charges.

"Q. As a matter of strategy, was he ever successful based upon giving you the polygraph test and result?

"A. Yes, sir."

Appellant claimed his incriminatory statements to Barton, Barton's written report and Barton's notes[2] were protected by the attorney-client privilege. Appellant expressly invoked the attorney-client privilege at trial. The State claimed appellant had waived the attorney-client privilege as to everything when he disclosed Barton's written report to the prosecution.

The trial court ruled Barton could testify from his written report and notes about the incriminatory statements appellant made to Barton. Appellant's lawyer was "completely flabbergasted."

"I understand. But, Your Honor, I'm completely flabbergasted by the Court's ruling. I've never heard of it being done and I—"

Barton testified before the jury from his written report about statements appellant made to him during the polygraph examination that were inconsistent with some of appellant's trial testimony. Barton also testified before the jury from his notes about the incriminatory statements appellant made to him during the pretest interview. Barton was not permitted to testify before the jury that appellant's incriminatory statements were made in connection with a polygraph examination, and the results of the polygraph examination were not admitted into evidence.

On direct appeal to the Court of Appeals, appellant claimed the trial court erred to allow Barton to testify from his written report and his notes because they (the statements, the notes and the written report) were protected by the attorney-client privilege. Appellant also claimed for the first time on appeal that Barton's notes were protected by the work-product doctrine.

The Court of Appeals held the attorney-client privilege was waived as to everything when appellant's lawyer disclosed Barton's written report to the police and the district attorney's office. See *Carmona*, 880 S.W.2d at 234. The Court of Appeals also held appellant's trial objection as to Barton's notes based on the attorney-client privilege failed to preserve for appeal his claim that Barton's notes were protected by the work-product doctrine. See *Carmona*, 880 S.W.2d at 235. We granted appellant's petition for discretionary review to examine the Court of Appeals' decision on appellant's claims based on the attorney-client privilege and the work-product doctrine.[3] See Tex.R.App.Proc. 200(a).

## I

■ Appellant argues his objection as to Barton's notes based on the attorney-client privilege "also preserved his complaint on work product grounds." Appellant claims:

"Because the polygraph examiner's notes reflecting Appellant's communications were at once privileged attorney-client communications *and* work product, an objection lodged on one privilege necessarily preserved the other privilege as a basis for review. Stated another way, it is impossible under the facts of this case for Appellant to have objected on the basis of the attorney-client privilege without also including the work product doctrine as a basis for nondisclosure of the communications." (Emphasis in Appellant's brief).

---

**2.** The record is not clear on how the prosecution discovered Barton's notes.

**3.** Appellant's ground for review states:
"The Court of Appeals erred by concluding that an objection based on attorney-client privilege does not preserve a complaint about the

work-product on the same subject and by rejecting this Court's interpretation of attorney-client privilege in *Burnett v. State*, 642 S.W.2d 765 (Tex.Crim.App.1982) and *Cruz v. State*, 586 S.W.2d 861 (Tex.Crim.App.1979) in favor of a published Eastland Court of Appeals opinion."

We disagree. We first note that in criminal cases the scope of the work-product doctrine is much less well-defined than is the scope of the attorney-client privilege. See Goode, Wellborn & Sharlot, *Guide to the Texas Rules of Evidence: Civil and Criminal,* Section 503.2 at 228–35 (Texas Practice 1988). Notwithstanding this, it is clear the attorney-client privilege and the work-product doctrine do not protect the same interests. See *id.* (outlining the differences between the work-product doctrine and the attorney-client privilege and pointing out that the work-product doctrine may insulate from discovery various matters not covered by the attorney-client privilege).

The work-product doctrine is designed for the benefit of the lawyer by protecting the lawyer from being compelled to disclose "the fruits of his labor to his adversary." See Goode, Wellborn & Sharlot, *Guide to the Texas Rules of Evidence: Civil and Criminal,* Section 503.2 at 231 (Texas Practice 1988) (the work-product doctrine on the civil side shields from discovery the "mental impressions, conclusions, opinions, and legal theories of the attorney concerning the litigation"); see also *Washington v. State,* 856 S.W.2d 184, 187–88 (Tex.Cr.App.1993) (the work-product doctrine protects lawyers' prepatory work from discovery). The attorney-client privilege is designed for the benefit of the client by guaranteeing to the client the confidentiality necessary to promote forthright communications between the lawyer and the client. See Goode, Wellborn & Sharlot, *Guide to the Texas Rules of Evidence: Civil and Criminal,* Section 503.2 at 230–31 (Texas Practice 1988); see also Tex. R.Crim.Evid. 503(b) (setting out the elements of the attorney-client privilege in criminal cases).

■ The proof required to establish one of these privileges does not necessarily establish the other privilege. And these privileges

can be waived in entirely different ways. Therefore, we cannot conclude that an objection based on the attorney-client privilege also puts the trial court or the other party on notice that this objection encompasses the work-product doctrine. See Tex.R.App.Proc. 52(a). We hold an objection based on the attorney-client privilege does not preserve for appeal a claim based on the work-product doctrine.

## II

Appellant also argues the Court of Appeals erroneously relied on *Fuller v. State,* 835 S.W.2d 768, 771 (Tex.App.—Eastland 1992, pet. ref'd), for its holding "the attorney-client privilege was waived when appellant's counsel disclosed [Barton's report] to the district attorney's office and the Taylor Police Department." See *Carmona,* 880 S.W.2d at 234. Appellant argues the Court of Appeals' opinion stands as authority that a lawyer may unilaterally waive the attorney-client privilege for the client and that the party claiming the privilege has the burden of disproving waiver when in cases like this the privileged materials already have been disclosed. See *id.* Appellant claims the Court of Appeals' opinion conflicts with this Court's holdings in *Burnett v. State,* 642 S.W.2d 765, 770–71 (Tex.Cr.App.1982), and *Cruz v. State,* 586 S.W.2d 861, 865 (Tex.Cr.App.1979).

■ We agree with appellant that the power to waive the attorney-client privilege belongs to the client, or his attorney or agent both acting with the client's authority. See *Burnett,* 642 S.W.2d at 770; *Cruz,* 586 S.W.2d at 865. We also agree with appellant that the party seeking to benefit by a finding of waiver has the burden of going forward with evidence that supports a finding of waiver, and the mere fact privileged materials already have been disclosed does not establish a "presumptive" or "automatic waiver."[4] See *Jordan v. Court of Appeals for Fourth*

---

4. However, we do not read the Court of Appeals' opinion as placing the burden on the party claiming the privilege to disprove waiver. We read the Court of Appeals' opinion as holding the State met "its burden of establishing the waiver" when it produced evidence that appellant's lawyer "disclosed a significant portion of the communication to the district attorney's office and the Taylor Police Department." See *Carmona,* 880 S.W.2d at 234 fn. 3.

*Supreme Judicial District,* 701 S.W.2d 644, 649–51 (Tex.1985) (orig. proceeding) (Gonzalez, J., concurring and dissenting) (mere disclosure of privileged materials does not establish an "automatic waiver"); Tex.R.Crim. Evid. 511 (holder of the privilege waives the privilege if he discloses or consents to disclosure of any significant part of privileged materials).

■ That the party claiming the privilege fails to provide relevant testimony is not necessarily dispositive of the issue.[5] As this case illustrates, the totality of the circumstances and reasonable inferences therefrom may support a finding of waiver. See *Cruz,* 586 S.W.2d at 866. And, when the party claiming waiver goes forward with evidence that supports a finding of waiver, the party claiming the privilege may find it wise to present evidence of no waiver. See *Jordan,* 701 S.W.2d at 650 (Gonzalez, J., concurring and dissenting) (when "a specific act of waiver is brought before the court, the privilege claimant may properly have the burden of establishing that there was no waiver").

We also note *Fuller* relies on the Texas Supreme Court's majority opinion in *Jordan,* 701 S.W.2d at 645–49. However, we are persuaded that Justice Gonzalez' concurring and dissenting opinion in *Jordan* is consistent with how this Court has treated on the criminal side issues of waiver of privileged materials. See *Jordan,* 701 S.W.2d at 649–51 (Gonzalez, J., concurring and dissenting); see also Goode, Wellborn & Sharlot, *Guide to the Texas Rules of Evidence: Civil and Criminal,* Section 511.1 at 341 (Texas Practice

1988) (pointing out that civil and criminal cases are not consistent on which party has the burden of going forward with evidence on the waiver issue). Justice Gonzalez' concurring and dissenting opinion in *Jordan* even cites this Court's opinion in *Cruz* in support of the proposition that the party claiming waiver has the burden of going forward with evidence of waiver. See *Jordan,* 701 S.W.2d at 651 (Gonzalez, J., concurring and dissenting).

We also note appellant and at least one learned treatise cite this Court's opinions in *Burnett* and *Cruz* for the proposition that the party claiming waiver has the burden of going forward with evidence that supports a finding of waiver. See Goode, Wellborn & Sharlot, *Guide to the Texas Rules of Evidence: Civil and Criminal,* Section 511.1 at 341 (Texas Practice 1988). Although *Burnett* and *Cruz* do not expressly so hold, they do so implicitly. See *Jordan,* 701 S.W.2d at 649–51 (Gonzalez, J., concurring and dissenting).[6]

■ Based on the foregoing, we disavow *Fuller* to the extent it holds "the party asserting the privilege has the burden of disproving the waiver," and we disapprove of the Court of Appeals' opinion in this case to the extent it holds disclosure of privileged materials by a defendant's lawyer, standing alone, is sufficient to support a finding of waiver. This does not suggest disclosure of privileged materials by a defendant's lawyer is not relevant on the issue of waiver. We simply hold this evidence, standing alone, is not dispositive on the issue of waiver and it does not create a "presumptive" waiver. See

---

**5.** We note in cases like this the party claiming the privilege is in the best position to know whether he waived the privilege. See Tex. R.Crim.Evid. 511 (the holder of the privilege waives the privilege if he voluntarily discloses or consents to the disclosure of privileged materials). However, other than asserting the attorney-client privilege at trial, appellant provided no testimony relevant to the issue of waiver. But see *Burnett,* 642 S.W.2d at 768 (defendant provided relevant testimony); *Cruz,* 586 S.W.2d at 864 (same).

**6.** We also note these authorities support the proposition that the party claiming a privilege has the burden to prove the existence of the

privilege, and that appellant produced no evidence he intended for his communications to Barton to be confidential. See *Jordan,* 701 S.W.2d at 647–49 & at 650 (Gonzalez, J., concurring and dissenting); *Burnett,* 642 S.W.2d at 768 (defendant testified she intended for her communication to be confidential and she did not give anyone permission to disclose it); Tex.R.Crim. Evid. 503(a)(5); Goode, Welborn & Sharlot, *Guide to the Texas Rules of Evidence: Civil and Criminal,* Section 511.1 at 341 (Texas Practice 1988) (party claiming the privilege has the burden of proving the applicability of the particular privilege to the communication in question).

*Jordan,* 701 S.W.2d at 650 (Gonzalez, J., concurring and dissenting).

## III

In this case, the Court of Appeals decided the attorney-client privilege was waived. This Court has decided the Court of Appeals erred to the extent it found a waiver based solely on evidence that Barton's written report was disclosed by appellant's lawyer to the prosecution and the police. See *Carmona,* 880 S.W.2d at 234 fn. 3. Therefore, we vacate the judgment of the Court of Appeals and remand the cause there for further proceedings consistent with this opinion.

OVERSTREET, J., concurs.

WOMACK, J., not participating.

BAIRD, Judge, concurring.

I concur in the judgment of the Court.

## I.

### THE FACTS

During cross-examination, the State sought to impeach appellant with statements made to a polygraph examiner employed by appellant's attorney. The statements were contained in a written report prepared by the polygraph examiner. It is undisputed that appellant's counsel provided a copy of the report to the district attorney and to the police department.[1] Appellant objected, contending the admission of the statements would violate the attorney-client privilege. The trial judge overruled the objection, determined the privilege had been waived and permitted the impeachment.

## II.

### ATTORNEY–CLIENT PRIVILEGE

Relying on *Fuller v. State,* 835 S.W.2d 768 (Tex.App.—Eastland 1992, pet. ref'd), the Court of Appeals held appellant waived the attorney-client privilege when his attorney voluntarily disclosed the polygraph examiner's report. *Carmona v. State,* 880 S.W.2d 227, 234, n. 3 (Tex.App.—Austin 1994).[2]

### A.

Conversations between an attorney and a client are generally privileged and may not be disclosed. The attorney-client privilege is found within TEX.R.CRIM.EVID. 503(b):

> General rule of privilege. A client has a privilege to refuse to disclose and *to prevent any other person from disclosing confidential communications* made for the purpose of facilitating the rendition of professional legal services to the client and made: (1) *between him* or his representative *and* his lawyer or *his lawyer's representative,* (2) between his lawyer and the lawyer's representative, (3) by him or his representative or his lawyer or a representative of the lawyer to a lawyer, or a representative of a lawyer representing

---

1. Several of the statements were contained only in the polygraph examiner's notes. The record does not establish how the district attorney's office obtained those notes.

2. In *Fuller,* the defendant and his co-defendant shot the defendant's step-father. Fuller and his co-defendant went to see an attorney with whom they discussed the shooting. When Fuller and his co-defendant left to retrieve their weapons, the attorney called the authorities, told them of the shooting and that Fuller and his co-defendant acted in self defense. Later that day the attorney, Fuller and the co-defendant went to the sheriff's department and surrendered their weapons. The attorney again discussed the shooting with the authorities. At trial the State sought to admit the attorney's statements to the authorities. Fuller and his co-defendant contended these statements were privileged because the attorney's knowledge came solely from attorney-client communications. *Fuller,* 835 S.W.2d at 769.

The *Fuller* Court held an attorney may waive the attorney-client privilege with the client's *implied consent. Fuller,* 835 S.W.2d at 771. The Court found Fuller and his co-defendant impliedly consented to the waiver of their attorney-client privilege because they accompanied the attorney to meet with the sheriff, failing to either claim the privilege or refute the disclosure of privileged information made in their presence. *Ibid.*

another party in a pending action and concerning a matter of common interest therein, (4) between representatives of the client or between the client and a representative of the client, or (5) among lawyers and their representatives representing the same client. A client has a privilege to prevent the lawyer or the lawyer's representative from disclosing any other fact which came to the knowledge of the lawyer or the lawyer's representative by reason of the attorney-client relationship.[3]

Statements made to an expert hired by defense counsel, including all notes and written reports, are subject to the attorney-client privilege. *Ballew v. State*, 640 S.W.2d 237, 240 (Tex.Cr.App.1980).

The Rules of Criminal Evidence make it clear the attorney-client privilege is held by the client, not the attorney. TEX.R.CRIM. EVID. 503(c)[4]; *and*, 1 STEVEN GOODE ET. AL., TEXAS PRACTICE: TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 503.2, at 321 (2d ed. 1993). And, only the client, or an attorney *acting with the client's consent*, may waive the attorney-client privilege. *Burnett v. State*, 642 S.W.2d 765, 770 (Tex.Cr.App.1982); *and*, E. Cleary, McCormick's Handbook on the Law of Evidence 194 (2d ed. 1972). Texas law does not authorize attorneys to unilaterally waive the attorney-client privilege for their clients; only the client may relinquish the privilege. *Cruz v. State*, 586 S.W.2d 861 (Tex.Cr.App.1979).

"A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). In *Cruz*, 586 S.W.2d 861, we considered waiver of the attorney-client privilege. Cruz telephoned his attorney, describing an incident where Cruz shot and killed another. The attorney met Cruz, discussed the shoot-

ing and viewed the body and crime scene. Cruz and the attorney returned to the attorney's office and the attorney prepared a written statement, with *"Miranda* warnings," concerning the shooting. *Id.*, 586 S.W.2d at 862–863.

Cruz and his attorney then went to the police station. When the police requested the opportunity to take Cruz's statement the attorney provided the prepared statement. Further, when police attempted to read Cruz the *"Miranda* warnings," the attorney interrupted, stating Cruz understood his rights. Cruz signed the prepared statement without reading it. *Id.*, 586 S.W.2d at 863.

We held Cruz's statement was inadmissible because it was obtained in violation of the attorney-client privilege. *Id.*, 586 S.W.2d at 865. We stated:

> ... By giving the statement to the police, [Cruz's] attorney ... disclosed the contents of communications confidentially made to him by appellant during the existence of their attorney-client relationship. These communications did not relate to the commission of future crimes and the client did not *knowingly consent* to disclosure; the attorney was not excused from his duty to preserve the confidences of his client.

*Ibid.* We further held the attorney-client privilege was personal to the client and could not be waived solely by Cruz's attorney. And we refused to *imply* Cruz's consent to the waiver:

> ... Nor can it be said that [Cruz], by signing the statement after it was given to the police, had waived a privilege so vitally important to him in this case. *Waiver will not be "lightly inferred"* and this act alone, done by appellant at the behest of [his] attorney ... fails to show either an intention by appellant to waive his rights or a

---

**3.** All emphasis is supplied unless otherwise indicated.

**4.** Tex.R.Crim.Evid. 503(c) PROVIDES:
Who may claim the privilege. The privilege may be claimed by the client, his guardian or conservator, the personal representative of a deceased client, or the successor, trustee, or

similar representative of a corporation, association, or other organization, whether or not in existence. The person who was the lawyer or the lawyer's representative at the time of the communication is presumed to have authority to claim the privilege but only on behalf of the client.

sufficient awareness of the nature and significance of his conduct.

*Ibid.*

*Cruz* is consistent with Supreme Court precedent holding waiver of a privilege or right should not be lightly inferred, and courts should "indulge every reasonable presumption against waiver."[5] *Aetna Ins. Co. v. Kennedy,* 301 U.S. 389, 393, 57 S.Ct. 809, 812, 81 L.Ed. 1177 (1937). Accordingly, courts should presume that a defendant did *not* waive his rights. *North Carolina v. Butler,* 441 U.S. 369, 372–373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979); *and, Carnley v. Cochran,* 369 U.S. 506, 515, 82 S.Ct. 884, 889, 8 L.Ed.2d 70 (1962). Therefore, a heavy burden rests on the prosecution to prove a knowing and intelligent waiver. *Miranda v. Arizona,* 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966); *Carnley,* 369 U.S. at 515–516, 82 S.Ct. at 890; *Barker v. Wingo,* 407 U.S. 514, 526, 92 S.Ct. 2182, 2190, 33 L.Ed.2d 101 (1972); *Johnson,* 304 U.S. at 464–465, 58 S.Ct. at 1023; *and, Webb v. State,* 533 S.W.2d 780, 785 (Tex.Cr.App.1976). And, this burden cannot be sustained from a silent record. *Carnley v. Cochran,* 369 U.S. at 516, 82 S.Ct. at 890; *and, Barker v. Wingo,* 407 U.S. at 526, 92 S.Ct. at 2190.

### B.

Following this rationale the majority correctly holds the party asserting the waiver has the burden of going forward with evidence of waiver. *Ante,* at 954. Therefore, the majority correctly disavows *Fuller* and correctly notes that the Court of Appeals' reliance on *Fuller* was misplaced. *Ibid.* And, because we only review "decisions" of the courts of appeals, *see,* Tex.R.App.P. 200

et. seq., the majority correctly remands this case to the Court of Appeals to reach a decision under the correct legal standard. *Sotelo v. State,* 913 S.W.2d 507, 510 (Tex.Cr. App.1995); *Denton v. State,* 920 S.W.2d 311 (Tex.Cr.App.1996); *Craig v. State,* 825 S.W.2d 128, 130 (Tex.Cr.App.1992); *Lee v. State,* 791 S.W.2d 141, 142 (Tex.Cr.App.1990); and *Williams v. State,* 790 S.W.2d 643, 645 (Tex.Cr.App.1990).[6]

### III.

### PRESERVATION OF ERROR

The Court of Appeals did not reach appellant's contention that his impeachment by statements made to the polygraph examiner violated the work-product doctrine. Instead, the Court of Appeals held appellant's objection under the attorney-client privilege was insufficient to preserve this error for appeal under TEX.R.APP.PROC. 52(a), and 74(d) and (f). *Carmona,* 880 S.W.2d at 235. The majority affirms holding, "... an objection based on the attorney-client privilege does not preserve for appeal a claim based on the work-product doctrine." *Ante,* at 953. I agree.

Although a general objection will preserve error when the error is obvious from the surrounding context, we have consistently held that the point of error must correspond to the objection made at trial. *See, Turner v. State,* 805 S.W.2d 423, 431 (Tex.Cr.App. 1991) (To preserve an issue for appellate review, the point of error must at least minimally comport with the objection at trial.); *Long v. State,* 800 S.W.2d 545, 548 (Tex.Cr. App.1990) (While a specific objection is usually required to preserve error, a general objection will suffice if the complaint is obvious

---

5. Indeed, "[s]uch an approach, by presuming waiver of a fundamental right from inaction, is inconsistent with this Court's pronouncements on waiver of constitutional rights." *Barker v. Wingo,* 407 U.S. 514, 526, 92 S.Ct. 2182, 2189, 33 L.Ed.2d 101 (1972). Further, "[w]e generally disfavor inferred waivers of constitutional rights." *Estelle v. Williams,* 425 U.S. 501, 515, 96 S.Ct. 1691, 1698, 48 L.Ed.2d 126 (1976) (Powell, J., concurring).

6. I pause to note the impropriety of the majority stating, "appellant produced no evidence he intended for his communications to Barton to be confidential." *Ante,* at 954 n. 6. The confidentiality determination should be made by the Court of Appeals. That Court is certainly aware that confidentiality is required because on original submission it stated, "[appellant's] communication with Barton must have been intended to be *confidential* ...." 880 S.W.2d at 234.

from the surrounding context.); *and, Zillender v. State,* 557 S.W.2d 515, 517 (Tex.Cr. App.1977) (A specific objection is required to preserve error in most cases, but a general objection will suffice when the objection is clear from surrounding context.). Because appellant's objection did *not* address the work-product doctrine, the issue is whether, considering the surrounding context, appellant's objection was sufficient to apprize the trial judge of a violation of the doctrine.

The work-product doctrine is designed to facilitate effective representation by providing attorneys with "a privileged area within which [he or she] can analyze and prepare his or her case." *Owens–Corning Fiberglas Corp. v. Caldwell,* 818 S.W.2d 749, 750 (Tex. 1991); *and,* 1 STEVEN GOODE ET. AL., TEXAS PRACTICE: TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 503.2, at 323 (2d ed. 1993). *See also, Washington v. State,* 856 S.W.2d 184, 187–88 (Tex.Cr.App.1993) (A defense investigator's taped interview of a witness was protected because the work-product doctrine protects attorneys' preparatory work from discovery.). Conversely, the purpose of the attorney-client privilege is to promote communication between attorney and client unrestrained by fear that these confidences may later be revealed. *See,* 1 STEVEN GOODE ET. AL., TEXAS PRACTICE: TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 503.2, at 323 (2d ed. 1993) (Outlining the difference between the work-product doctrine and attorney-client privilege.). *Compare, Washington,* 856 S.W.2d at 187–88 (The focus of the work-product doctrine is on the attorney's need to prepare a case for trial.); *with, Austin v. State,* 934 S.W.2d 672, 673 (Tex.Cr. App.1996) ("The purpose of the attorney-client privilege is to promote communication between attorney and client unrestrained by fear that these confidences may later be re-vealed."); *and, Cruz,* 586 S.W.2d at 865 (The purpose of the attorney-client privilege is to promote straightforward communication between clients and their attorneys). Thus, the work-product doctrine and the attorney-client privilege address different spheres of privilege; one focuses on the attorney's preparation and the other centers on the communications between the attorney and client. Thus, an objection contending a violation of the attorney-client privilege would not apprize the trial judge of a possible violation of the work-product doctrine. *See, James v. State,* 772 S.W.2d 84, 99–100 (Tex.Cr.App. 1989) (An objection based on relevance will not preserve error for an objection to the improper use of character evidence.). In light of the record in this particular case, I agree with the majority that appellant failed to preserve for appellate review any error relating to the work-product doctrine. TEX. R.APP.P. 52(a) (Specific objection is required to preserve error for appellate review.). *See, Turner,* 805 S.W.2d at 431 (Complaining party must make a timely, specific objection to preserve error for appellate review.).

With these comments, I join the judgment of the Court.

MEYERS, J., joins this opinion.