NO. 07-03-0362-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

FEBRUARY 8, 2006

_____

MICHAEL LEROY CAMERON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 9TH DISTRICT COURT OF MONTGOMERY COUNTY;

NO. 01-09-05992-CR; HONORABLE FRED EDWARDS, JUDGE

_____

Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

**MEMORANDUM OPINION ON REMAND FROM COURT OF CRIMINAL APPEALS**

Following a plea of not guilty, appellant Michael Leroy Cameron was convicted of delivery of a controlled substance by a jury. By our opinion of August 16, 2004, we affirmed appellant's conviction and sentence of 25 years. On appellant's petition for discretionary review, the Court of Criminal Appeals vacated this Court's judgment and

remanded the case for reconsideration of appellant's first issue of whether the trial court erred by refusing to allow his former attorney to testify absent a complete waiver of the attorney-client privilege. By his second issue, appellant contended his trial counsel was ineffective. After further review, we affirm the trial court's judgment.

Ron Pickering and Philip Cash were working as undercover narcotics officers at the Handle Bar nightclub in Conroe on the night of April 26, 2002. Just before midnight, Pickering was approached by Stacy Warden, appellant's co-defendant, who asked if he wanted to smoke some marihuana with her. Pickering declined, but asked if she knew where he could buy some cocaine. Warden "said she could probably get it" for him, then placed a call on Pickering's cell phone. After concluding the phone call, Warden confirmed that "it [the cocaine] would be there within 15 minutes." When Pickering inquired about price, Warden advised him that the drugs would cost $120.

Shortly before 2:00 a.m., a man later identified as appellant entered the nightclub, made eye contact with Warden, then walked out. Warden told Pickering that the drugs had arrived, then Pickering, Cash, and Warden went outside to the parking lot. There, the officers observed Warden standing by appellant next to a pickup truck. Warden took what Pickering "assumed was the cocaine" from appellant, "put it in her fist and folded her arms and walked across the parking lot" to him. She then opened her fist to reveal the cocaine. Pickering took the drugs from Warden and gave her the money, which she placed "in her hand and [then she] walked back with her hands crossed like she did when she

2

approached" him. When Warden reached appellant, she handed him the money. Once the transaction was complete, Warden, Cash, Pickering, and appellant met at the truck, where Warden introduced appellant as Mike. Appellant asked Pickering "how he liked the blow," the street name for powder cocaine. After Pickering "told him it was great," appellant advised him that "if [he] needed anything more that [he] should contact [Warden]."

At some point during the evening, Pickering obtained the license plate number of the truck by which he saw appellant standing. Later that night, Pickering contacted his dispatcher and "had the plate run" and discovered that the truck was registered to an individual who previously had been "handled" by the Montague County Sheriff's Department. From that information, Pickering developed the owner's date of birth, height, and weight, which he transmitted to the Department of Public Safety. After DPS provided Pickering with a driver's license photo, he determined that the address on the license was the same as the address on the vehicle registration. Moreover, Pickering recognized the person depicted in the driver's license photo as the same individual with whom he had come into contact at the nightclub. Having thus developed appellant as the suspect in a delivery of a controlled substance case, Pickering referred the case to the district attorney's office. The grand jury indicted appellant for that offense in September of 2001.

With his first issue, appellant maintains the trial court erred in refusing to allow Jones, his former trial attorney, to testify absent a complete waiver of the attorney-client privilege. Specifically, appellant contends the testimony he sought to elicit from Jones was

3

not privileged because it had nothing to do with confidential information between appellant and Jones. Rather, appellant maintains that Jones would have "provide[d] beneficial defense testimony based on inconsistencies in the State's file." Thus, the trial court was wrong to conclude that such testimony would violate the attorney-client privilege and open the attorney to unqualified cross-examination by the State. By our original opinion, we held that appellant's general statement that he did not "believe it requires any type of waiver" was insufficient to apprize the trial court of the basis of his specific objection, and that appellant failed to inform the trial court in an effective and timely manner. Thus, his objection and entitlement to relief was not preserved for review. However, on remand, the issue presented is whether appellant, as the offering party, was required to tell the trial court not only that his opponent's objection was not correct, but also *why* it was not correct.

Since it is not enough to tell the trial court that evidence is admissible, appellant was also required to tell the court why the evidence was admissible. Reyna v. State, 168 S.W.3d 173, 177 (Tex.Cr.App. 2005). Before considering the applicable portions of the reporter's record, we briefly review Rule 503 of the Texas Rules of Evidence, titled Lawyer-Client Privilege.

Here, the proffered testimony did not implicate a confidential communication between appellant and his former attorney which would be covered under Rule 503(b)(1)(A). Instead, it implicated the work product of appellant's former attorney and is covered by Rule 503(b)(2), which is expressly designated as a special rule of privilege in

4

criminal cases. These two rules were distinguished in Carmona v. State, 941 S.W.2d 949, 953 (Tex.Cr.App. 1997), where the Court of Criminal Appeals noted that, unlike the attorney-client privilege which is designed for the benefit of the client by guaranteeing the confidentially of attorney-client communications, the work-product doctrine is designed for the benefit of the lawyer by protecting the lawyer from being compelled to disclose the "fruits" of his labor. In *Carmona,* the Court concluded that an objection based on the attorney-client privilege does not put the trial court or the other party on notice that the objection encompasses the work-product doctrine. *Id.*

After appellant called his former attorney as a witness, out of the presence of the jury, the record shows the following colloquy:

Defense: Your Honor, at this time Defense would call Guy Jones to the stand.

Prosecutor: Can we approach, Judge?

Court: You may. (Bench conference out of hearing of the jury).

Prosecutor: Since Guy Jones was the previous attorney of record, I would just like to know what the heck we're doing. This is his previous attorney who filed motions.

Court: What's your point here?

Defense: Guy tells me that when he initially looked at the offense report the first time he looked at it, it was a handwritten report which is why I specifically asked Pickering why there was a handwritten report. He said he didn't know. When I got on the case, he told me that there was a handwritten report, and it gave a different color of the truck that was – there was a

5

handwritten report. When he looked at the offense report a second time, it was typewritten.

Court: Take the jury out. (Jury out).

Court: All right. Now, let the record reflect that you have called a former attorney of record, Mr. Jones to the witness stand and your request is for what purpose?

Defense: Your Honor, it came to my attention when I was hired on this case that Mr. Jones when he first looked at the offense report that it was a handwritten report; went back to look at the report a second time and it was a typewritten report. When he looked at it the first time, it was a different colored truck given in the report as there was in the second report. That would be the whole purpose of his testimony.

Court: On the basis of his personal memory or his notes?

Defense: On the basis of his, actually his notes.

Court: Do you have your notes with you?

Jones: They're outside the courtroom, Your Honor.

Court: And your client is willing to waive the attorney-client privilege, I assume?

Defense: Yes, Your Honor.

Court: Well, that's an interesting question.

Prosecutor: He's got to waive it as to all aspects.

Defense: Your Honor, may I have a moment?

Court: Exactly. I think that if he waives the attorney-client privilege you cannot pick and choose as to what you get to say as to what areas you get to reveal. Once that attorney-client privilege crack has been opened, it's a gate, and they're allowed to now – because he's going to have to waive it on the record. I'll give you a minute to talk to him.

6

Defense: I understand they'll be allowed to go into any conversations as well.

Court: You need to talk to your client about that and if he is going to waive his attorney-client privilege then I want it on the record, especially for the protection of Mr. Jones. What's your decision?

Defense: Your Honor, I don't believe that it requires any type of waiver. He's certainly not going to – at this point he's not going to waive his attorney-client privilege.

Court: Then I'm not going to let Mr. Jones testify. Mr. Jones cannot get on the stand and testify as to work product in order to impeach testimony and yet not have a waiver of attorney. You can't have it both ways. You either get it on or you waive it. Mr. Jones' attorney-client privilege would go to the extent of even asking him did he represent him or anything else. He has to do it. I'm not going to put him in that position or this Court.

Following this exchange, during an offer of proof Jones testified that when he reviewed the State's file for the first time, it included a handwritten police report designating the truck as white. Jones further averred that the second time he reviewed the file, the handwritten report had been replaced with a typewritten version that described the truck as dark blue. According to Jones, the two reports were otherwise identical.

According to the record, the trial judge and both attorneys focused their contentions and analysis on the attorney-client communication privilege, but the work-product privilege was not addressed by either attorney or the judge. Significantly, appellant did not contend the evidence was admissible under the special provision covering attorney work-product privilege or inform the court that the attorney-client privilege was not applicable. Moreover,

regarding the waiver of his privilege, appellant's final statement was that he declined to waive his privilege. Based on this record and following *Reyna*, 168 S.W.3d at 177, we hold the alleged error was not preserved for review. Appellant's first issue is overruled.

By his second issue, appellant asserts his "[t]rial counsel was ineffective in failing to properly object to hearsay evidence that [he] had guns, and that Stacy Warden was afraid that [he] 'would pull one on her.'"[1] We disagree. In determining whether counsel's representation was so inadequate as to violate a defendant's Sixth Amendment right to counsel, Texas courts adhere to the two-pronged test enunciated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)*; see* Hernandez v. State, 726 S.W.2d 53, 57 (Tex.Cr.App. 1986). Appellant must first prove that counsel's performance was deficient, *i.e.*, that his assistance fell below an objective standard of reasonableness. *See* McFarland v. State, 928 S.W.2d 482, 500 (Tex.Cr.App. 1996). If appellant demonstrates deficient assistance of counsel, he must then affirmatively prove prejudice as a result of the deficient assistance. *Id*. In proving prejudice, appellant must demonstrate a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. Mitchell v. State, 68 S.W.3d 640, 642 (Tex.Cr.App. 2002). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Hernandez,* 726 S.W.2d at 55. In other words, appellant must demonstrate that

---

[1]With this issue, appellant complains that the objectionable testimony was hearsay. In the body of his argument, however, he asserts that it was also objectionable on relevance grounds. *See* Tex. R. Evid. 403.

the deficient performance prejudiced his defense.  *Mitchell*, 68 S.W.3d at 642.  Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim.  Garcia v. State, 887 S.W.2d 862, 880 (Tex.Cr.App. 1994), *cert. denied*, 514 U.S. 1021, 115 S.Ct. 1368, 131 L.Ed.2d 223 (1995).  The burden is on appellant to prove by a preponderance of the evidence that counsel was ineffective.  *McFarland*, 928 S.W.2d at 500.

The adequacy of defense counsel's assistance is based upon the totality of the representation rather than by isolated acts or omissions of trial counsel.  *Id*.  Furthermore, appellate review of trial counsel's representation is highly deferential and presumes that counsel's conduct fell within the wide range of reasonable and professional representation.  Bone v. State, 77 S.W.3d 828, 833 (Tex.Cr.App. 2002).  Although the constitutional right to counsel ensures the right to reasonably effective counsel, it does not guarantee errorless counsel, whose competency or accuracy of representation is to be judged by hindsight.  Ex parte Kunkle, 852 S.W.2d 499, 505 (Tex.Cr.App. 1993).  Finally, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.   Thompson v. State, 9 S.W.3d 808, 813 (Tex.Cr.App. 1999).

The basis of appellant's argument under this issue stems from the testimony of Shelley Cummings, Warden's roommate, who testified for the defense.  Cummings, who was also at the nightclub on the night of the offense, testified on direct examination that she

did not like appellant "[b]ecause of the way [she] felt he was treating Stacy and the things that were going on between them." According to Cummings, she attempted to prevent Warden from leaving the nightclub with appellant. By this issue, appellant specifically claims his counsel was ineffective for failing to properly object to the following testimony:

State: Okay. Now, you stated initially when you were asked by defense counsel how you knew the Defendant and you stated that he was a friend of yours. Okay. Then you stated later that you don't like him and he's not a friend of yours.

Cummings: When I first met him, yes, we got along and we were friends, but as I got to know him, no, I did not like him.

State: Why didn't you like him?

Cummings: Because of the way I felt he was treating Stacy [Warden] and the things that were going on between them.

State: What was that?

Defense: Your Honor, I'm going to object to relevance.

Court: What's the relevance?

State: Judge, I believe her line of testimony is she's not letting her leave, and he [the defense attorney] was trying to explore why she didn't want her to leave. I'm just trying to explore that at this time.

Court: All right. I'll let you go into it briefly.

State: Let me ask you the question. Do you remember --

Cummings: Because from what Stacy [Warden] had talked to me and the times I talked to her on the phone, she was scared of him, and she was my best friend, and I didn't want her in jeopardy.

State: Why was she afraid of him?

10

Cummings:    I'm not real sure.  She never said.  I know they fought a lot.  She made comments about he had guns, and she was afraid he would pull one on her.  I don't know that he ever did, but she was scared of him.

Defense:    Your Honor, I'm going to object at this point.  I think we're getting into this line.

Court:    You need to move on.

State:    So she's your close friend and your roommate, and you understand that she was afraid of the Defendant, but she hasn't fully explained to you why or just things she's shared --

Defense:    Your Honor, I'm going to object, asked and answered and relevance.

Court:    It's a summation question.  Move on.

Initially, we acknowledge our authority to address an ineffective assistance of counsel claim on direct appeal where the record is sufficient to prove that counsel's performance was deficient.  *See* Robinson v. State, 16 S.W.3d 808, 813 n.7 (Tex.Cr.App. 2000).  Notwithstanding appellant's argument to the contrary, however, this record does not present one of those rare cases allowing us to do so.  As in the majority of instances, the record here is simply undeveloped and cannot adequately reflect the failings of trial counsel, if any.  *Thompson*, 9 S.W.3d at 813-14.  Furthermore, the portion of the record reproduced above suggests that appellant's attorney was, in fact, alert and responsive to the prosecutor's line of questioning.  Indeed, he objected either to the State's question or Cummings's response no less than three times in the space of one and a half pages of reporter's record.  In any event, on this record we are not in a position to fairly evaluate appellant's claim and decline his invitation to do so.  Appellant's second issue is overruled.

11

Accordingly, the judgment of the trial court is affirmed.


Don H. Reavis<br>Justice

Johnson, C.J., not participating.


Do not publish.