Opinion filed March 6, 2008











 
 
  
 
 







 
 
  
 
 




Opinion filed March 6,
2008

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                 ____________

 

                                                          No. 11-06-00121-CR 

                                                    __________

 

                           DONALD SAMUEL CAMPBELL, Appellant

                                                             V.

                                        STATE
OF TEXAS, Appellee

 



 

                                         On
Appeal from the 118th District Court

                                                          Martin
County, Texas

                                                     Trial
Court Cause No. 1382

 



 

                                              M
E M O R A N D U M   O P I N I O N

 

The
jury convicted Donald Samuel Campbell of attempted aggravated sexual assault
and assessed his punishment at confinement for ten years and a fine of
$10,000.  Campbell appeals.  We affirm.  

                                                                         Issues

Appellant
presents four issues for review.  In the first two, he complains of the trial
court=s exclusion of
evidence.  In the third issue, appellant complains that he was improperly
impeached with a prior conviction.  In the fourth issue, appellant argues that
he was denied effective assistance of counsel at trial. 

                                                               Background
Facts








Appellant
was charged with and convicted of attempting to sexually assault Katrena Dawn
Chisum and of using or exhibiting a firearm in the commission of the offense. 
The offense occurred at the residence where Matthew David Wilcox lived with his
parents, who were Chisum=s
aunt and uncle.  On the day of the incident, Chisum was moving into the Wilcox
residence, and Wilcox was working on a car.  Wilcox was unable to fix the car,
so he sought the assistance of appellant, his friend.  Appellant helped Wilcox;
drank some beer; and, at some point, was introduced to Chisum. After the car
was fixed, appellant=s
wife arrived to give appellant a ride home.  Later that evening, appellant
walked back to the Wilcox residence and startled Wilcox and Chisum, who were
sitting in the shop talking.  Chisum went inside while Wilcox and appellant
drank some more beer and went rabbit hunting.  Wilcox and appellant returned to
the Wilcox residence, went inside, had a snack, and sat down to watch
television.  Wilcox fell asleep, but he woke up around 5:00 a.m. and saw
appellant and Chisum on the porch.  Chisum was smoking a cigarette, and
appellant was holding Wilcox=s
rifle.  Although Wilcox thought this was odd, he was feeling sick at the time
and just went to bed.

Chisum
testified that she was in bed asleep when she was awakened by appellant, who
was in bed behind her with his hand over her mouth.  Appellant had taken off
his pants and was wearing only underwear and a T-shirt.  Appellant was holding
a .22 rifle, which belonged to Wilcox.  Chisum was terrified.  Appellant tried
to turn Chisum around and take her pants off.  They wrestled and fell to the
floor.  Appellant kept asking Chisum if she would Abe with [him].@ 
Chisum tried to Ahumanize@ herself, and she finally
got appellant to stop and talk to her.  Appellant talked about his problems and
his wife.  Appellant apologized to Chisum, but then he threw her on the bed and
tried again.  During the incident, appellant was choking Chisum.  Appellant
quit when the nightstand got knocked over.  Appellant was shaking, and he
apologized again.  They continued to talk, and eventually Chisum encouraged
appellant to leave.  Appellant put his pants on, unloaded the gun, and handed
Chisum the bullets.  Chisum put the bullets away, and they walked outside to
smoke a cigarette.  Appellant and Chisum remained on the porch talking until
daybreak, at which time appellant walked home.  As soon as appellant left,
Chisum went to Wilcox=s
room, woke him up, and told him what had happened.  They called the police.

Chief
Deputy Jerry Heflin and Sheriff Randy Cozart responded to the call.  They
verified that Chisum had some red marks around her neck.  Sheriff Cozart
testified that the marks looked like they had been made by hands with a choke
hold squeezing the neck.  Appellant was arrested at his house shortly
thereafter, still groggy and smelling of alcohol.








Appellant=s version of the events is
similar but deviates drastically at the point where he and Chisum get
together.  Appellant denied having a gun or using any kind of force and
testified that Chisum came in the living room, woke appellant, and invited him
to come to bed with her.  After they got in bed, he attempted to roll over with
her, and they fell off the bed.  At that point, he realized that he was quite
drunk, and he expressed concern over what they were about to do.  Appellant got
up and left the room.  Chisum reportedly told appellant that he was an Aidiot for not doing
anything.@ Afterward,
they went to the porch and talked until daybreak.  Appellant walked home.

                                                               Excluded
Evidence

In
the first two issues, appellant contends that the trial court abused its
discretion by excluding evidence regarding Chisum=s
mental state and the motive of appellant=s
wife to testify against him.  We review a trial court=s decision to admit or exclude evidence under
an abuse of discretion standard.  Torres v. State, 71 S.W.3d 758, 760
(Tex. Crim. App. 2002).  We will not reverse a ruling that lies within Athe zone of reasonable
disagreement.@  Id.


In
the first issue, appellant complains of the exclusion of evidence that Chisum
suffered from depression and had suicidal tendencies.  The record shows that,
during the cross-examination of Wilcox, defense counsel asked Wilcox if he knew
Chisum Awell enough to
know about her contemplating suicide.@ 
The State objected to the lack of foundation and relevance.  The trial court
sustained the objection, and trial counsel then asked Wilcox if he knew Awhether or not that she
suffered from depression.@ 
The State objected that the witness was not qualified to give such a medical
conclusion and that the question was improper at that time.  The trial court
again sustained the State=s
objection.  No offer of proof or bill of exception was made.








Appellant
contends that these questions were relevant to impeach the credibility of the
witness.  However, the questions were directed to Wilcox, not Chisum, and were
asked prior to Chisum testifying.  Thus, contrary to appellant=s argument, the questions
were not relevant at the time they were asked.  Chisum=s credibility was not yet in issue. 
Subsequently, when Chisum testified, appellant did not attempt to cross-examine
Chisum with regard to her mental health.  Moreover, any error in the exclusion
of the evidence was not preserved for review because appellant did not make an
offer of proof or a bill of exception or otherwise indicate what the excluded
evidence would have shown.  Guidry v. State, 9 S.W.3d 133, 153 (Tex.
Crim. App. 1999) (error in the exclusion of evidence may not be urged unless
the proponent perfected an offer of proof or a bill of exception); see Tex. R. Evid. 103(a)(2).  Nothing in
the record indicates that Chisum actually suffered from depression or had
suicidal tendencies or that some nexus existed between Chisum=s mental health and her
testimony at trial.  Appellant=s
first issue is overruled.  

In
the second issue, appellant complains of the exclusion of evidence showing his
estranged wife=s
motive to testify against him.  Appellant contends that he should have been
allowed to ask his wife about an affair that she had with another witness.  The
record shows that, at the time of trial, appellant and his wife were separated
and that appellant was living with another woman and her four children.  During
direct examination, appellant=s
wife admitted that she had told appellant she was having an affair with Wilcox,
but she denied actually having such an affair.  She testified at trial that she
made the statement Ajust
to get at@ appellant
because he was living with another woman and her children and not supporting
his own children.  On cross-examination, appellant=s wife was asked whether she had also told the
pastor at church that she was having an affair with Wilcox.  The State objected
that the information was privileged, and the trial court sustained the
objection.  Appellant made no offer of proof or bill of exception, and nothing
in the record indicates what, if anything, appellant=s wife told her pastor. 

Pursuant
to Tex. R. Evid. 505, a
confidential communication made to a member of the clergy is privileged.  What
appellant=s wife told
her pastor would be covered by Rule 505.  We note that the privilege can be
waived by the voluntary disclosure of the privileged matter (such as the
disclosure appellant=s
wife made to appellant).  Tex. R. Evid.
511.  However, appellant did not urge waiver at trial or on appeal.  The party
seeking to benefit by a finding of waiver has the burden to show waiver.  Carmona
v. State, 941 S.W.2d 949, 953-54 (Tex. Crim. App. 1997).  Because appellant
did not urge or show that the privilege had been waived and because appellant
did not perfect a bill of exception or make an offer of proof regarding the
excluded testimony, we cannot hold that the trial court abused its discretion
in sustaining the objection and excluding the testimony.  See id.; Guidry,
9 S.W.3d at 153.  Moreover, appellant=s
wife=s animosity
toward appellant was clear from her testimony at trial, and the exclusion of
evidence that appellant=s
wife may or may not have told her pastor that she was having an affair with
Wilcox was not harmful under Tex. R.
App. P. 44.2.  Thus, the error, if any, is not reversible error. 
Appellant=s second
issue is overruled.

 

 








                                                         Impeachment
of Appellant

In
his third issue, appellant argues that the trial court erred in allowing
appellant to be impeached with the prior burglary conviction in violation of Tex. R. Evid. 609(c)(2).  Pursuant to
Rule 609(c)(2), evidence of a prior conviction is not admissible to impeach a
witness if the witness has satisfactorily completed probation for that offense
and has not been convicted of a subsequent felony or crime of moral turpitude. 


The
record in this case shows that it was appellant, not the State, who first
alluded to the prior conviction:  the third question asked by trial counsel
during the direct examination of appellant was, AMr.
Campbell, in '92 you had a charge against you for burglary of a habitation?@  Appellant responded, AYes.@  During cross-examination by the State,
appellant did not object that his impeachment violated Rule 609(c)(2) or that
the burglary conviction was otherwise inadmissible for impeachment purposes. 
The only objection made by appellant with respect to testimony about the
burglary conviction was a general objection to a question indicating that
appellant Acouldn=t live out probation.@  Prior to the objection,
appellant had already confirmed on cross-examination that he was convicted at
the age of eighteen and that he went to the penitentiary at the age of
nineteen.  Appellant did not timely object and did not object on the grounds
that he urges on appeal; therefore, he failed to preserve his complaint for
review.  Tex. R. App. P.
33.1(a).  The third issue is overruled.

                                                          Effectiveness
of Counsel








In
his final issue, appellant contends that he received ineffective assistance of
counsel at trial because counsel failed to file a motion to quash as to the
enhancement, failed to offer proof as to the excluded testimony, presented
evidence of an otherwise inadmissible burglary conviction, failed to object
that Rule 609(c)(2) barred appellant=s
impeachment with the prior conviction, failed to request a jury charge on the
lesser included offense of attempted sexual assault, allowed appellant to plead
true to the enhancement despite its unavailability, and failed to object to the
pen packet.  In order to determine whether trial counsel rendered ineffective
assistance at trial, we must first determine whether appellant has shown that
counsel=s
representation fell below an objective standard of reasonableness and, if so,
then determine whether there is a reasonable probability that the result would
have been different but for counsel=s
errors.  Strickland v. Washington, 466 U.S. 668 (1984); Hernandez v.
State, 988 S.W.2d 770 (Tex. Crim. App. 1999); Hernandez v. State,
726 S.W.2d 53, 55 (Tex. Crim. App. 1986).  In assessing counsel=s performance, we must make
every effort to eliminate the distorting effects of hindsight, to reconstruct
the circumstances, and to evaluate the conduct from counsel=s perspective at the time. 
We must indulge a strong presumption that counsel=s
conduct fell within the wide range of reasonable professional assistance, and
appellant must overcome the presumption that, under the circumstances, the
challenged action might be considered sound trial strategy.  Stafford v.
State, 813 S.W.2d 503, 508‑09 (Tex. Crim. App. 1991). 

Most
of the deficiencies that appellant points out relate to his 1992 conviction for
burglary.[1]  This
conviction was alleged as an enhancement in the indictment.  It was first
brought to the jury=s
attention during the guilt/innocence phase of trial by trial counsel during his
direct examination of appellant.  Appellant was also impeached with this
conviction during the State=s
cross-examination of appellant.  During the punishment phase of trial, the
enhancement paragraph of the indictment was read to the jury, appellant pleaded
true to the enhancement allegation, and the corresponding pen packet was
admitted into evidence without objection.  Subsequently, on rebuttal
questioning by his counsel, appellant testified as follows:

Q:
And while you=re here,
you said you plead [sic] true to that.  And they offered that pen packet
there.  When you got your probation revoked, what happened to you?  They said
you went to prison.  But what happened after you went to prison?

 

A:
It was the shock probation.

 

Q:
So what does that mean, Ashock
probation@?

 

A:
They send you down for three months to the trustee camp.  It was just for two. 
It wasn=t population
or anything.  And if you obey the rules for three months, everything is good. 
You get back out and you=re
on probation, and you get to finish it out.  There=s no extra time involved or anything.

 

Q:
And were you able to live it out when you got out?

 

A:
Yes. 

 








Q:
Okay.  Is that what that SAIP refers to in that judgment there?  When it says A10 years SAIP,@ is that an indication that
if things go right, you -- it=s
intended that you be shocked out?

 

A: I guess.  I don=t
--

After
both sides rested and closed, the prosecutor and trial counsel briefly
questioned whether the prior conviction was a Afinal
conviction.@  The next
morning, prior to jury arguments on punishment and outside the jury=s presence, the trial court
announced:

Since we left here
yesterday evening and during the time the Court has prepared the Charge, it=s come to the Court=s attention based upon
information received by [the prosecutor] that the conviction earlier alleged in
this cause with regard to a prior conviction for burglary of a habitation out
of Potter County may not comply with the requirements of the law with regard to
a prior felony conviction sufficient to raise the range of punishment to a
first degree felony, even if proven.

 

And it=s
my understanding the State is waiving its right to request a charge even
referring to that conviction for the purpose of enhancement. 

No reason was
given as to why the prior conviction Amay
not comply@ with the
law regarding enhancements.  Trial counsel thanked the court and the
prosecutor.  The trial court omitted from the punishment charge any reference
to the prior conviction or the enhancement allegation.  








The
pen packet from the prior conviction contains a 1992 judgment indicating that
appellant was convicted of the offense of burglary after first having been
placed on deferred adjudication probation.  During the probationary period, the
State filed a motion to adjudicate alleging that appellant had violated the
terms and conditions of his probation.  The motion was granted, and appellant=s guilt was adjudicated. 
The first page of the 1992 judgment shows that punishment was assessed at A10 years TDCJ-ID and $2000
Fine.  Sentenced under article 42.12 S.A.I.P.@ 
Elsewhere in the judgment, punishment was stated to be A10 yrs TDCJ-ID and $2000 Fine.@  At that time, former Tex. Code Crim. Proc. art. 42.12, ' 8[2]
provided for the Special Alternative to Incarceration Program (SAIP), which was
commonly known as Aboot
camp.@  Ex parte
Bittikoffer, 802 S.W.2d 701, 702 (Tex. Crim. App. 1991).  Under former
Article 42.12, section 8, the judge that imposed an SAIP sentence could, within
a certain time frame, suspend further execution of the sentence and place the
defendant on probation.  Id.  When this type of sentence is imposed, the
conviction does not become a final conviction for enhancement purposes unless
the probation is revoked.  See Ex parte Langley, 833 S.W.2d 141, 143
(Tex. Crim. App. 1992).  Thus, if appellant received an SAIP sentence and
served out his probation successfully, then his burglary conviction could not
have been used for enhancement purposes.  Furthermore, the burglary conviction
would not have been admissible for impeachment purposes under Rule 609(c)(2).  

To
defeat the presumption of reasonable professional assistance, the record must
affirmatively demonstrate the ineffectiveness.  Thompson v. State, 9
S.W.3d 808, 813-14 (Tex. Crim. App. 1999).  Rarely will the record on direct
appeal contain sufficient information to permit a reviewing court to fairly
evaluate the merits of an ineffective assistance claim.  Bone v. State,
77 S.W.3d 828, 833 (Tex. Crim. App. 2002).  The record in this case does not
contain sufficient information to affirmatively demonstrate trial counsel=s ineffectiveness; the
record is not clear as to whether appellant satisfactorily completed probation
or even what type of punishment was actually assessed.[3] 
Because the record in the present case has not been sufficiently developed as
to the admissibility and finality of appellant=s
prior conviction, we cannot hold that counsel=s
performance fell below an objective standard of reasonableness.[4]

Appellant
also contends that trial counsel was ineffective for failing to make an offer
of proof or bill of exception as to the excluded testimony.  There is nothing
in the record indicating what the excluded testimony would have been. 
Consequently, again, we cannot determine from the record on appeal that trial
counsel=s performance
fell below an objective standard of reasonableness.  








Appellant
contends that trial counsel was ineffective for failing to request an
instruction on the lesser included offense of attempted sexual assault without
the aggravating factor of the use of a firearm.  Our review of the record
reveals that appellant was not entitled to an instruction on the lesser
included offense because he testified that he committed no offense and because
there was no other evidence indicating that he attempted to commit a sexual
assault but did not exhibit or use a deadly weapon during the attempt.  See
Lofton v. State, 45 S.W.3d 649, 652 (Tex. Crim. App. 2001) (defendant=s testimony that he
committed no offense is not adequate to raise lesser included offense); Bignall
v. State, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994); see also Hall v.
State, 225 S.W.3d 524 (Tex. Crim. App. 2007); Rousseau v. State, 855
S.W.2d 666 (Tex. Crim. App. 1993) (delineating well-settled law on when a
charge on a lesser included offense is required).  Because appellant would not
have been entitled to the lesser included instruction, trial counsel was not
ineffective for failing to request such an instruction.  

Appellant
has not shown that trial counsel=s
performance fell below an objective standard of reasonableness.  The fourth
issue is overruled.  

                                                               This
Court=s Ruling

The
judgment of the trial court is affirmed.  

 

 

TERRY McCALL

JUSTICE

 

March 6, 2008

Do not publish. 
See Tex. R. App. P.
47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and
Strange, J.









[1]We note that it is not clear from the judgment whether
appellant was convicted of burglary of a habitation or burglary of a building. 
On the front page of the judgment, some unidentified person has marked through
the word ABuilding@ and written AHabitat@; however, on
the remaining pages of the judgment, the offense is referred to four times as ABurglary of a Building.@ 
Also, the offense is shown to be a second degree felony.  At that time,
burglary of a building was a second degree felony and burglary of a habitation
was a first degree felony.  See Tex.
Penal Code Ann. ' 30.02 historical note (Vernon 2003) (stating text of
Section 30.02 as it read prior to the 1993 amendment). 





[2]Tex. Code Crim. Proc. Ann. art. 42.12, ' 8
(Vernon Supp. 2007) is currently entitled AState
Boot Camp Program.@  Although the section has been amended, its effect is
similar. 





[3]We note that the Texas Court of Criminal Appeals has
held that defense counsel performed deficiently when he elicited testimony from
the defendant at the guilt phase of trial regarding two convictions that would
have been inadmissible for impeachment because they were not final
convictions.  Robertson v. State, 187 S.W.3d 475 (Tex. Crim. App.
2006).  





[4]We note that our resolution of this issue does not
affect appellant=s entitlement to re-urge this complaint in a
postconviction writ.  Bone, 77 S.W.3d at 837 n.30.