Preciliano CARMONA, Appellant,

v.

The STATE of Texas, Appellee.

No. 03–93–00061–CR.

Court of Appeals of Texas,
Austin.

June 5, 1997.

Keith S. Hampton, Austin, for Appellant on appeal.

Ken Anderson, District Attorney, John M. Bradley, Assistant District Attorney, Georgetown, for Appellee.

Before CARROLL, C.J., and KIDD and B.A. SMITH, JJ.

## ON REMAND

BEA ANN SMITH, Justice.

A jury convicted Preciliano Carmona of aggravated sexual assault and indecency with a ten-year-old girl. The jury assessed concurrent prison terms of sixty years for the three aggravated sexual assault counts and twenty years for the indecency count. The jury also assessed fines of $7,000 and $3,000 for the respective convictions. This Court affirmed the judgment. *Carmona v. State*, 880 S.W.2d 227 (Tex.App.—Austin 1994). On petition for discretionary review, the Court of Criminal Appeals held that we erred to the extent we found waiver of the attorney-client privilege based solely on defense counsel's disclosure of a polygraph examiner's report to the police and prosecution. *Carmona v. State*, 941 S.W.2d 949 (Tex.Crim.App.1997). The court vacated our judgment and remanded the cause for us to reconsider the issue of waiver of the attorney-client privilege. We again will affirm the trial court's judgment.

## BACKGROUND

On August 4, 1985, the complainant made an outcry statement to a police officer that Carmona, her stepfather, sexually abused her. She testified that Carmona began sexually abusing her when she was eight years old after he moved in with her mother. He began by touching her breasts and vagina. Soon he started putting his penis in her anus, causing her pain and bleeding. He would also touch her genitals with his penis and would put his fingers in her vagina while she held his penis. She testified that she did not report the abuse because he threatened to hurt her mother or someone else if she reported anything. She said he gave her clothing and money for allowing the abuse.

Joe, her thirteen-year-old brother, testified that on August 4, 1985 he saw Carmona kneeling in front of the complainant holding her underwear in his hand. His sister was seated on a sofa chair with her legs in the air, her nightgown lifted. After Joe's interruption, the siblings fled the home on Joe's bicycle and met their mother, who returned with them to the home. The complainant's mother confronted Carmona, who immediately left. The victim gave her outcry statement that same day. The complainant's mother testified that Carmona called her three weeks later and threatened to hurt a family member if they did not drop the charges. The complainant's sister testified she overheard the conversation on a separate receiver.

Carmona denied committing the sexual contact and making verbal threats to the family. He said that on August 4 he was holding a beer in one hand and a cup in the other when the clothed complainant asked for money. She and her brother suddenly left the house. He denied that his wife confronted him about sexual abuse, but said he left the house permanently because of an argument.

The disputed testimony is that adduced by the State from Mike Barton, a polygraph examiner hired by the defense to impeach Carmona for his denial on direct and cross-examination that he ever engaged in any sexual contact with the victim, for his statement on direct examination that the victim asked him for money while fully clothed, and for his denial on cross-examination that the victim lifted her nightgown in front of him.

Carmona objected, contending that the conversation between himself and Barton was protected by the attorney-client privilege. The trial court concluded that any privilege protecting the admissions was waived when Carmona's counsel presented Barton's report of the polygraph examination to a peace officer and to a prosecutor in an attempt to get the charges reduced or dismissed.

Barton testified regarding admissions Carmona made during their pretest interview. Barton testified that Carmona admitted to numerous instances of sexual contact with the complainant, but denied ever penetrating her vagina or anus. Barton also said Carmona denied committing the charged offenses on August 4, stating that on that day the victim approached him, raised her gown and offered him sex for money, became afraid when her brother walked in, and ran away.[1] The trial court refused to allow any mention of the circumstances surrounding the conversation or of Barton's work as a polygraph examiner. Carmona chose not to elicit favorable details of the conversation so as to minimize the impact of Barton's testimony.

## DISCUSSION

In our previous opinion, we erroneously held that, by disclosing the polygraph results to prosecutors and law enforcement officers, defense counsel waived any privilege. The court of criminal appeals reversed, holding that the mere fact of defense counsel's disclosure of the privileged materials standing alone does not establish an automatic waiver. *Carmona*, 941 S.W.2d at 954.

A client may refuse to disclose or allow disclosure of confidential communications made among the client, the client's representatives, the attorney, and the attorney's representatives to facilitate rendition of professional legal services to the client. Tex. R.Crim. Evid. 503(b). A communication is

confidential if it is not intended to be disclosed to persons other than those to whom disclosure is made to further rendition of professional legal services to the client. Tex. R.Crim. Evid. 503(a)(5). The privilege belongs to the client. Tex.R.Crim. Evid. 503(b), (c); *Burnett v. State*, 642 S.W.2d 765, 770 (Tex.Crim.App.1982). The client can waive the privilege by voluntarily disclosing or consenting to the disclosure of a significant part of the privileged matter. Tex. R.Crim. Evid. 511. Disclosure by the attorney does not waive the privilege absent the client's consent. *See Cruz v. State*, 586 S.W.2d 861, 865 (Tex.Crim.App.1979).

The privilege claimant must prove the existence of the privilege. *Austin v. State*, 934 S.W.2d 672, 674 (Tex.Crim.App. 1996); *see also Carmona*, 941 S.W.2d at 954 n. 6. Once privilege has been established, the party seeking to establish waiver has the burden of going forward with evidence that supports a finding of waiver. *Id.* at 953. The State did this here by showing that the alleged confidential communications had been disclosed. To waive the privilege, the defense attorney must act with his client's consent when disclosing the privileged materials. *See* Tex.R.Crim. Evid. 503(b), (c). Waiver may be inferred from the totality of the circumstances and reasonable inferences. *Carmona*, 941 S.W.2d at 954. The fact that the attorney has disclosed privileged materials is relevant. Once the State has gone forward with evidence that supports a finding of waiver, "the party claiming the privilege may find it wise to present evidence of no waiver." *Id.* (citing *Jordan v. Fourth Court of Appeals*, 701 S.W.2d 644, 650 (Tex.1985) (Gonzalez, J., concurring and dissenting) (when "a specific act of waiver is brought before the court, the privilege claimant may properly have the burden of establishing that there was no waiver.")).

1. The questions during the polygraph exam must have been carefully crafted to track Carmona's denials, because Barton's report, not entered into evidence, reflected Carmona's innocence. There is some suggestion that Barton used his pretest interviews with this client and other clients to design questions that produced favorable polygraph results. This defense attorney routinely disclosed these favorable results to prosecutors with some success to get charges dismissed or reduced. The assistant district attorney in Williamson County commented at trial on the inexplicable results this defense counsel had with "favorable" polygraph results: "And I grew more and more incredulous as we went through the cases, that his clients were having 100 percent pass rate with polygraph examiners, which is an unusual coincidence in my experience."

■ We review the trial court's decision on the applicability of a privilege for an abuse of discretion. *See Welch v. State*, 908 S.W.2d 258, 265 (Tex.App.—El Paso 1995, no pet.); *Anderson v. State*, 880 S.W.2d 35, 37 (Tex.App.—Tyler 1994, pet. ref'd); *Reece v. State*, 772 S.W.2d 198, 201 (Tex.App.—Houston [14th Dist.] 1989, no pet.) (all discussing husband-wife privilege). We can reverse a decision only if "the trial court applied an erroneous legal standard, or when no reasonable view of the record could support the trial court's conclusion under the correct law and the facts viewed in the light most favorable to its legal conclusion." *DuBose v. State*, 915 S.W.2d 493, 498 (Tex.Crim.App. 1996). If we find an abuse of discretion, we must reverse unless we conclude beyond a reasonable doubt that the error did not contribute to the conviction. Tex.R.App. P. 81(b)(2).

■ The critical issue here is whether Carmona consented to his attorney's disclosure of the polygraph results to prosecutors and law enforcement officers. The inference that he did is not irrational. The polygraph examiner, the prosecutor, and the police knew that Carmona's attorney disclosed favorable polygraph test results. They also knew this attorney had been successful in using this strategy to have charges reduced or dismissed. The inference that Carmona consented to his attorney's actions is further supported by the following exchange at trial. When the prosecutor asked whether Carmona wanted his attorney to cross examine Barton, Carmona's attorney retorted, "My client does what I tell him to do." There is no evidence that Carmona indicated otherwise. It was not irrational for the trial court to infer that Carmona authorized the disclosure here, hoping for favorable results.

Carmona, who had previously chosen to testify, was in a position to disprove waiver by asserting that he did not consent to his attorney's strategy to disclose the favorable polygraph results in the hopes of gaining a dismissal of the charges against him. He chose not to deny his consent to the disclosure. Indeed, after asserting the privilege, and after the State came forward with evidence of disclosure, he provided no testimony relevant to the issue of waiver. By contrast, in *Burnett*, the defendant testified that she had never given anyone permission to disclose any part of a privileged conversation. *Burnett*, 642 S.W.2d at 768. Here, the totality of the circumstances supports the trial court's finding of waiver.

■ The fact that Carmona's attorney revealed only the test results does not sway our conclusion. The pretest interview and the test were essentially one communication. The report of the test results revealed a significant part of that communication. Carmona's attorney knew about the unfavorable pretest conversation; Carmona may not waive the privilege as to only the favorable parts. *See* 1 Steven Goode, Olin G. Wellborn III & M. Michael Sharlot, *Guide to the Texas Rules of Evidence: Civil and Criminal* § 511.2, 478 (Texas Practice 2d ed.1993).

## CONCLUSION

The defense attorney's disclosure of the polygraph results was sufficient evidence of waiver to shift the burden to Carmona to establish his lack of consent. Carmona never produced any evidence that he intended for his communications to Barton to be confidential and he never denied giving his consent to their disclosure. Considering the totality of the circumstances and reasonable inferences, we cannot say the trial court abused its discretion in ruling that Carmona waived the attorney-client privilege as to the admissions he made to Barton.

We overrule appellant's sole point of error considered on this remand and affirm the judgment of conviction.