

# IN THE
# TENTH COURT OF APPEALS

## No. 10-11-00290-CR

**MISTY LEIGH HERBERT,**

                                                        **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                        **Appellee**


From the 18th District Court
Johnson County, Texas
Trial Court No. F42453


## MEMORANDUM  OPINION


The jury convicted Misty Leigh Herbert of possession of a controlled substance, and the trial court assessed her punishment at ten years confinement.  The trial court suspended imposition of the sentence and placed Herbert on community supervision for ten years.  The jury convicted Herbert of endangering a child, and the trial court assessed her punishment at confinement for two years in a state jail facility.  The trial court suspended imposition of the sentence and placed Herbert on community supervision for five years.  We affirm.

## Background Facts

Herbert, her son, and her boyfriend were staying at the Delux Inn. Officers assigned to the Stop the Offender Program Special Crimes Unit were observing the motel for possible drug trafficking. The officers saw a green car that they recognized from previous narcotics investigations. The driver of the car went into the room rented by Herbert and her boyfriend and left a short time later. The officers went to the room and asked for permission to search. Herbert and her boyfriend gave permission for the search, and the officers found methamphetamine in the room.

## *Batson* Challenge

In her first issue, Herbert argues that the trial court abused its discretion in denying her *Batson* challenge on the State's use of peremptory strikes. *See Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In *Batson*, the United States Supreme Court held that, while a prosecutor ordinarily may exercise peremptory strikes for any reason related to his views concerning the outcome of the trial, "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race." *Grant v. State*, 325 S.W.3d 655, 657 (Tex. Crim. App. 2010). A *Batson* challenge to a peremptory strike consists of three steps: 1) the opponent of the strike must establish a prima facie showing of racial discrimination; 2) the proponent of the strike must articulate a race-neutral explanation; and 3) the trial court must decide whether the opponent has proven purposeful racial discrimination. *Id*.

The trial court's ruling in the third step must be sustained on appeal unless it is clearly erroneous. *Id*. Because the trial court's ruling requires an evaluation of the

credibility and demeanor of prosecutors and venire members, and because this evaluation lies within the trial court's province, we defer to the trial court in the absence of exceptional circumstances. *Id*.

After both sides completed the voir dire examination, Herbert's counsel informed the trial court:

> Just to be on the cautious side. As the Court is aware, I directed one question or two questions to prospective juror number 15, Ms. Johnson. And I believe she's the only African American in the jury pool, Your Honor. I just wanted to advise the State that, you know, I wanted to visit with her about that.

The prosecutor responded, "I don't understand what he's saying." Herbert's counsel said, "If, in fact, there's a strike, then I'm going to be doing a Batson challenge."

The State exercised a peremptory strike against Juror 15, and Herbert brought a *Batson* challenge. The trial court placed the defense attorneys and prosecutors under oath. Herbert's counsel stated, "I truly believe that the State using their peremptory challenges has stricken [Juror 15] strictly on the basis of race." Counsel further explained that the State did not ask any questions of Juror 15.

The trial court inquired whether the State had a race neutral explanation for the strike. The State responded:

> The State, of course, is not bound only by its questions but also [defense counsel]. During the part when juror number 15 was talking about the O.J. Simpson trial, she made the statement 'Really, it's guilty until you're proven innocent.' … But based on that statement, there's just no way we want her on the jury.

Herbert's counsel stated that he "did not hear that" but did not present any evidence to rebut the State's explanation. The trial court overruled the *Batson* challenge.

Herbert's counsel asked the jury panel to raise "your hand right now from what you've heard if you feel that [appellant] is not guilty." The record reflects that an unidentified venire person replies "Really, it's guilty until proven innocent." Counsel then references the O.J. Simpson trial and its effect on the presumption of innocence. The venire person who made the statement is never identified.

The State provided a race neutral explanation for the peremptory strike. Herbert did not present any evidence to show that Juror 15 did not make the comment on the presumption of innocence. The prosecutor testified under oath that he struck Juror 15 because of the comment. The trial court evaluated the credibility and demeanor of the prosecutor. *See Grant v. State* 325 S.W.3d at 657. The reason for the peremptory strike need not actually turn out to be correct. *See Grant v. State* 325 S.W.3d at 660.

The State's lack of individual questioning of Juror 15 is not dispositive on finding purposeful discrimination in particular when, as here, the jurors are examined as a group. *See Grant v. State* 325 S.W.3d at 659. The trial court's finding that the State offered a race neutral explanation for the strike was not clearly erroneous. We overrule the first issue on appeal.

### Motion for New Trial

In her second issue, Herbert complains that the trial court erred in failing to conduct an evidentiary hearing on her motion for new trial. Herbert filed a motion for new trial with an attached affidavit from Juror 15. In the affidavit, Juror 15 states that Herbert's counsel informed her of the statement she allegedly made at voir dire and that she read a copy of the transcript from voir dire. Juror 15 further states that she

"thought and prayed about the statement that I allegedly made and I am positive I did not make the statement." Juror 15 states in the affidavit that she feels she was excluded from the jury because she is African-American. Herbert argues that she was entitled to an evidentiary hearing on her motion for new trial based upon the affidavit of Juror 15.

There is no absolute right to a hearing on a motion for new trial. *Smith v. State*, 286 S.W.3d 333, 338 (Tex. Crim. App. 2009). We review a trial court's denial of a hearing on a motion for new trial under an abuse of discretion standard, in which we reverse only if the decision was so clearly wrong as to lie outside the zone within which reasonable persons might disagree. *Smith v. State*, 286 S.W.3d at 339. Absent such an abuse of discretion, an appellate court is not justified in reversing the trial court's judgment. *Id*.

The purposes of a new trial hearing are (1) to determine whether the case should be retried or (2) to complete the record for presenting issues on appeal. *Id.* A hearing is not required when the matters raised in the motion for new trial are subject to being determined from the record. *Id*. A defendant is not entitled to a hearing on his motion for new trial unless he establishes the existence of reasonable grounds showing that he could be entitled to relief. *Smith v. State*, 286 S.W.3d at 339. Our review is limited to the trial judge's determination of whether the defendant has raised grounds that are both undeterminable from the record and reasonable, meaning they could entitle the defendant to relief. *Smith v. State*, 286 S.W.3d at 340.

The record reflects that a member of the jury panel stated that a person is guilty until proven innocent. The prosecutor testified under oath that he struck Juror 15 based

upon that statement.  Herbert's counsel did not recall Juror 15 making the statement. The record contains an affidavit from Juror 15 that she did not make the statement. Therefore, Herbert has not raised a matter that is undeterminable from the record.  The trial court did not abuse its discretion in overruling the request for an evidentiary hearing on the motion for new trial.  We overrule the second issue.

## Admission of Testimony

In her third issue, Herbert contends that the trial court erred in admitting the testimony of the polygraph examiner.  In the fourth issue, Herbert argues that the polygraph examiner was utilized as an agent of the State.

The defense hired professional polygraph examiner Richard Wood to conduct a polygraph examination on Herbert.  During trial, the State sought to introduce pre-test statements Herbert made to Wood.  Herbert objected to the admission of Wood's testimony.  The trial court allowed the testimony and instructed the parties to refer to Wood as an "independent investigator" in front of the jury.

Wood testified that Herbert told him her boyfriend, Eric, had sold drugs in her presence and that she had "handed drugs to people."  Herbert told Wood that she knew there was methamphetamine in the motel room and that Eric and another man had smoked methamphetamine in the room before the officers arrived.  Herbert did not smoke methamphetamine with them at that time, but she had smoked some earlier that day.  Herbert told Wood that she did not sell any methamphetamine out of the bag found by the officers.

We review a trial court's decision regarding the admissibility of evidence under an abuse of discretion standard. *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007). Because trial courts are in the best position to decide questions of admissibility, appellate courts uphold a trial court's admissibility decision when that decision is within the zone of reasonable disagreement. *Id*. An appellate court may not reverse a trial court's decision regarding the admissibility of evidence solely because the appellate court disagrees with the decision. *Id*.

Herbert first argues that the trial court erred in admitting Wood's testimony because her statement contained confidential information under both the attorney-client and work-product privileges. Rule 503(b)(1) lays out the general rule of the lawyer-client privilege in Texas: "A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client." Section (b)(2) adds a special rule of privilege in criminal cases, which states that "a client has a privilege to prevent the lawyer or lawyer's representative from disclosing any other fact which came to the knowledge of the lawyer or the lawyer's representative by reason of the attorney-client relationship." TEX. R. EVID. 503 (b) (1 (2); *Cameron v. State*, 241 S.W.3d at 19. The attorney's work-product falls under this special rule of privilege. *Id*. In general, privileges are exclusionary rules of evidence that may be used to suppress relevant evidence. *Id*. The rule specifies that the privilege may be claimed by the client or the attorney on behalf of the client. *Id*.

The work-product doctrine is designed for the benefit of the lawyer by protecting the lawyer from being compelled to disclose "the fruits of his labor to his adversary." *Carmona v. State*, 941 S.W.2d 949, 953 (Tex. Crim. App. 1997). The record shows that Herbert's counsel disclosed the pre-test statement to the State, and has therefore waived the use of the privilege.

The attorney-client privilege is designed for the benefit of the client by guaranteeing to the client the confidentiality necessary to promote forthright communications between the lawyer and the client. *Id*. The defense attorney may waive the privilege on behalf of the client with the client's consent. TEX. R. CRIM. EVID. 503(b), (c); *Carmona v. State*, 947 S.W.2d 661, 663 (Tex. App.—Austin 1997, no pet.).

The party seeking to establish waiver of the privilege has the burden of going forward with evidence that supports a finding of waiver. *Id*. To waive the privilege, the defense attorney must act with his client's consent when disclosing the privileged materials. *Id*. Waiver may be inferred from the totality of the circumstances and reasonable inferences. *Id*. The disclosure of the privileged material by defense counsel is relevant in determining waiver. *Id*. After the State has gone forward with evidence supporting waiver of the privilege, the party claiming the privilege "may find it wise to present evidence of no waiver." *Id*.

The State presented evidence of waiver by showing that Herbert's counsel disclosed the pre-test statements to the State. Herbert chose to testify at trial. Herbert did not offer any testimony that she did not consent to the disclosure of the privileged

material to the State.  The totality of the circumstances support a finding of waiver. *See*

*Carmona v. State*, 947 S.W.2d at 664.

Herbert further argues that the statement was inadmissible under Rule 408 of the

Texas Rules of Evidence.  Rule 408 provides:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount is not admissible to prove liability for or invalidity of the claim or its amount.  Evidence of conduct or statements made in compromise negotiations is likewise not admissible.  This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice or interest of a witness or a party, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

The rule is limited on its face to evidence which is presented to prove "the

validity for or invalidity of [a] claim or its amount."  *Smith v. State*, 898 S.W.2d 838, 843

(Tex. Crim. App. 1995).  We find that Rule 408 is not applicable to any agreement

between the State and the Herbert concerning her polygraph examination.  We overrule

the third issue.

Herbert next argues that Wood in effect became an agent of the State and that her

pre-test statement was obtained in violation of Tex. R. Crim. Pro. Ann. art. 38.23 (West

2005).  There is nothing in the record to support Herbert's argument that Wood acted as

an agent of the State.  Herbert's attorney stated on the record " … I paid for the

polygraph … in my opinion, he [Wood]  was our agent."  Herbert voluntarily agreed to

the polygraph examination and she was not in custody at the time of the pre-test statement.  We overrule the fourth issue.

## Conclusion

We affirm the judgment of the trial court.


AL SCOGGINS<br>Justice

Before Chief Justice Gray,
  Justice Davis, and
  Justice Scoggins
Affirmed
Opinion delivered and filed April 18, 2012
Do not publish
[CR25]