

**In The**

# Court of Appeals

**For The**

# First District of Texas

————————————

## NO. 01-12-00200-CR

————————————

**LAJUAN CECILE BAILEY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 174th District Court**
**Harris County, Texas**
**Trial Court Case No. 1298261**

---

## DISSENTING OPINION ON EN BANC RECONSIDERATION

Because I believe that no competent attorney would employ a trial strategy that calls for eliciting privileged communications over his client's clearly-stated objection on the record, and because the record clearly supports the conclusion that

defense counsel did so in this case, I respectfully dissent.

A client may refuse to disclose or allow disclosure of confidential communications made among the client, the client's representatives, the attorney, and the attorney's representatives to facilitate rendition of professional legal services to the client. TEX. R. CRIM. EVID. 503(b). A communication is confidential if it is not intended to be disclosed to persons other than those to whom disclosure is made to further rendition of professional legal services to the client. TEX. R. CRIM. EVID. 503(a)(5). The privilege belongs to the client. TEX. R. CRIM. EVID. 503(b),(c); *Burnett v. State*, 642 S.W.2d 765, 770 (Tex. Crim. App. 1982). The client can waive the privilege by voluntarily disclosing or consenting to the disclosure of a significant part of the privileged matter. TEX. R. CRIM. EVID. 511. Disclosure by the attorney does not waive the privilege absent the client's consent. *See Cruz v. State*, 586 S.W.2d 861, 865 (Tex. Crim. App. 1979). To waive the privilege, the defense attorney must act with his client's consent when disclosing the privileged materials. *See* TEX. R. CRIM. EVID. 503(b), (c). Waiver may be inferred from the totality of the circumstances and reasonable inferences. *Carmona v. State*, 941 S.W.2d 949, 954 (Tex. Crim. App. 1997).

The State cites a series of cases in which, by their silence, defendants were held to have acquiesced to their attorney's waiver of the attorney-client privilege or some other right or admission. *See Fuller v. State*, 835 S.W.2d 768, 771 (Tex.

2

App.—Eastland 1992, pet. ref'd), *disapproved on other grounds*, *Carmona*, 941 S.W.2d at 953–54 (holding defendant consented to disclosure of privileged materials when lawyer disclosed same to deputy in defendant's presence and defendant said nothing); *Drimmer v. Appleton*, 628 F. Supp. 1249, 1251–52 (S.D.N.Y 1986) (holding attorney-client privilege waived when defendant voluntarily permitted his attorney to testify to privileged information without objecting); *see also Stribling v. State*, 542 S.W.2d 418, 419 (Tex. Crim. App. 1976) (holding defendant acquiesced to stipulation entered into by his attorney in court); *Chaney v. State*, 464 S.W.2d 653, 656 (Tex. Crim. App. 1971) (same); *Genzel v. State*, 415 S.W.2d 919, 921–22 (Tex. Crim. App. 1967) (same); *Griffith v. State*, 635 S.W.2d 145, 147 (Tex. App.—Houston [1st Dist.] 1982, no pet.) (same); *see also Alvarado v. State*, 912 S.W.2d 199, 214–15 (Tex. Crim. App. 1995) (holding that testimony was admissible as an adoptive admission because appellant was present when made and clearly called for response); *Tucker v. State*, 771 S.W.2d 523, 535–36 (Tex. Crim. App. 1988) (same).

However, in this case, appellant was not silent as to her position on the attorney-client privilege. She repeatedly stated to the court, "I'm only waiving privilege to the one case that was filed against me in Brazoria County . . ." and "[j]ust only that." And, when her defense counsel started questioning Roberts outside the scope of this limited waiver of the attorney-client privilege, appellant

sent defense counsel a note that said, "We can deal with this without bringing in Jefferson County." Defense counsel admits that "[d]uring the exchange with the—with Mr. Roberts, my client was attempting to tell me something, but because I was in the heat of questioning, I was intent on the questioning, I wasn't listing to her intently." Defense counsel also stated on the record that his questioning of Roberts outside the scope of the authorized waiver was "against [appellant's] wishes."

Based on the record before us, it cannot be said that appellant sat by and acquiesced in defense counsel's disclosure of confidential information. Appellant specifically defined the parameters of her waiver, and when defense counsel exceeded those parameters, she attempted to stop him. She did everything but stand up in open court and disrupt the court proceedings in an attempt to preserve her attorney-client privilege.

Any suggestion that appellant *might* have authorized defense counsel to disclose her privileged communications during whispered conversations with defense counsel during the trial is not supported, but indeed, is controverted by the record. The only two people privy to the whispered discussions during trial—appellant and defense counsel—have already stated on the record that no agreement to waive privilege was ever reached by appellant and defense counsel. In this circumstance, no motion for new trial hearing is required—the contents of

those communications between defense counsel and appellant are already in the record, and both parties to the communications testified that appellant did not waive the privilege.

Nor is there anything in the record that leads us to conclude that the trial court disbelieved defense counsel's confession of error. It is unreasonable to believe that defense counsel would "fall on his sword" by falsely confessing to committing legal malpractice and ethical violations in an attempt to provoke a mistrial for a client who had not yet been convicted. Indeed, the Court of Criminal Appeals has found the first prong of *Strickland* met, *without the necessity of a credibility determination*, when trial counsel filed an affidavit in which he stated that he had no trial strategy in failing to request a jury instruction and that his actions were "simply an oversight." *See Ex parte Varelas*, 45 S.W.3d 627, 632 (Tex. Crim. App. 2001).

Although not raised by the State, either at trial or on appeal,[1] the majority concludes that, by raising a "reasonable-excuse" defense strategy, appellant waived the attorney-client privilege and "placed in issue all of her communications with her lawyer about the need to actually appear for hearings as required by the court." Essentially, the majority concludes that appellant could not waive privilege as to

---

[1] An appellate court must review a trial court's ruling on a motion for mistrial in light of the arguments before the trial court at the time it ruled. *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004).

5

the Brazoria County charges without also waiving privilege as to the Jefferson County charges, and that to attempt to do so would allow appellant to use the attorney-client privilege as both a sword and a shield.

In *Carmona v. State*, 947 S.W.2d 661, 664 (Tex. App.—Austin 1997, no pet.) the defense hired a polygraph examiner, who conducted both a pretest interview and a polygraph test on the defendant. *Id.* at 662–63. Defense counsel disclosed the results of the polygraph to a prosecutor in an attempt to get the charges dismissed, but objected at trial when the State attempted to introduce portions of the pretest interview. *Id.* After finding that the defendant consented to the disclosure of the results to the prosecutor, the court held that "the pretest interview and the test were essentially one communication[,]" and that the defendant could "not waive the privilege as to only the favorable parts." *Id.* at 664.

This case is not like *Carmona*, in which the defendant attempted to use parts of a confidential conversation to her advantage, while excluding other parts, *all in the defense of the same charged offense*. There, both parts of the confidential conversation were clearly relevant to the charged offense. Here, Roberts represented appellant in two separate cases—one in Harris County and one in Jefferson County. Discussions that the two may have had about one case would not be relevant and admissible as to the other. Indeed, by affirmatively introducing evidence that appellant planned not to appear in Jefferson County either, defense

6

counsel injected harmful evidence of character conformity that the State generally would have been unable to present. *See* TEX. R. EVID. 404(b).

In contrast, the Brazoria case that appellant consented to disclose was highly relevant to the Harris County case because it served as the basis for the September 8 revocation of her bond, and it is the September 8 revocation that led to appellant's "reasonable belief" argument that she no longer needed to show up in court on September 21. Appellant believed that she could not "jump" a bond that had already been revoked. On the day she failed to appear in Jefferson County, appellant's bond had not yet been revoked, so its relevance to the issue of appellant's "reasonable excuse" defense would be minimal, if any, because of the differing circumstances proceeding appellant's failure to appear in each county. In sum, appellant was not using confidential communications about Brazoria County as a sword, while using confidential communications about Jefferson County as a shield, because only Brazoria County had relevance to the charged offense in Harris County.

The majority also claims that appellant invoked a "reasonable excuse defense" by claiming "that [Roberts] failed to tell her that she had to appear[,]" and that such action was "a plausible trial strategy." The majority mischaracterizes appellant's reasonable excuse defense as an attack on Roberts and argues that her reasonable excuse defense was "substantially predicated on [Bailey's] reliance on

the counsel she claimed she received from [Roberts]." While appellant did preview her reasonable excuse defense during voir dire, at no time prior to Sasser's unauthorized disclosure did appellant suggest that Roberts was the source of her belief that she did not have to go to court because her bond had been revoked. The first evidence regarding a possible source for appellant's belief that she did not have to go to trial after her bond was revoked was appellant's bailbondsman, not Roberts. It was only after defense counsel "overstepped [his] bounds" and mentioned the Jefferson County proceeding was there any evidence suggesting that Roberts was a source of appellant's mistaken belief.

Prior to Sasser's cross-examination of Roberts during which confidential evidence related to the extraneous offense in Jefferson County was disclosed, there was *no evidence* that appellant blamed her mistaken belief on advice of counsel or that Roberts told her that she did not need to appear at trial. Indeed, the first evidence on this issue was elicited from Stim Bowie, appellant's bail bondsman, during the following exchange with defense counsel, Sasser:

> [Sasser]: Do you remember telling me: I was a little confused because the Court had revoked her bond on the 8th, but then they forfeited it on the 21st, and you said you had never even seen that before; do you remember telling me that?
>
> [Bowie]: Yes, sir, I did.
>
> * * * *
> [Sasser]: Sir, why, when I was in your office, did you tell me that when

8

you looked on your computer and saw her bond revoked on September 8th for her case it was a non-issue at that point, she was no longer in custody, there was a warrant for her arrest, and for you—that nobody was asking you for the $15,000? Do you remember telling me that?

[Bowie]: Yes, sir, but they changed—it was a forfeiture. There's a difference. You're saying revoked and bond forfeiture. Those are two different things.

[Sasser]: Sir, remember telling me you didn't know that at the time? Remember you told me you just found that out on this case?

[Bowie]: That's correct.

[Sasser]: What did you find out in this case that you didn't know before about the difference between revocation and forfeiture?

[Bowie]: I didn't understand that if you—if your bond was already revoked, you still cannot forfeit that bond if you don't show up on that day. That's what I did not know.

[Sasser]: You've been doing this for ten years and you didn't understand how that worked, did you?

[Bowie]: No, sir.

[Sasser]: Certainly, this defendant wouldn't be expected to know that?

* * * *

[Sasser]: And did you further tell her that revocation by the Court, basically, cancels your contract with her, there's nothing else for her to perform, no other performance needed in that contract?

[Bowie]: That is correct.

Appellant's defense was that her belief that the September 8 revocation of her

9

bond excused her from the obligation to appear on September 21 was reasonable, especially since Bowie, a 10-year-bailbondsman, believed likewise. And, more importantly, the defense could have be established without divulging any confidential information other than the fact that there was a warrant for appellant's arrest in Brazoria County, which led to the revocation of her bail on September 8 in Harris County.

The majority states that "[appellant] stated an intention to limit the scope of her waiver of the privilege[,]" but "Sasser sought to exploit that attempted limitation through selective disclosure[.]" Even if I were to agree with the majority's conclusion that Sasser's trial strategy waived appellant's attorney-client privileged through his cross-examination of Roberts about the Jefferson County proceeding, such trial strategy was clearly undertaken without appellant's consent. No competent trial attorney would employ a trial strategy that requires eliciting privileged communications, or waiving a privilege as to those communications, over his client's clearly-stated objection on the record. Put simply, if Sasser's trial strategy required waiving a privilege that his client did not want waived, his representation of her was ineffective, especially since it caused the admission of an otherwise inadmissible extraneous offense.

In light of these considerations, I conclude that appellant did not voluntarily waive the attorney-client privilege as to the Jefferson County proceedings and any

discussions with Roberts about that extraneous offense. The decision to waive attorney-client privilege belongs to the client, and no reasonable attorney would employ a trial strategy that strips his client of that right. As such, this is one of those rare instances in which "no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). Because the majority holds otherwise, I respectfully dissent.

Sherry Radack
Chief Justice

Panel consisted of Chief Justice Radack and Justices Massengale and Huddle.

En banc reconsideration was requested. TEX. R. APP. P. 49.7

A majority of the justices of the Court voted in favor of reconsidering the case en banc.

The en banc court consists of Chief Justice Radack and Justices Jennings, Keyes, Higley, Bland, Massengale, Brown, Huddle, and Lloyd.

Justice Massengale, writing for the majority of the en banc court, joined by Justices Bland, Brown, Huddle, and Lloyd.

Chief Justice Radack, dissenting, joined by Justices Jennings, Keyes, and Higley.

Publish. TEX. R. APP. P. 47.2(b).