ACCEPTED
08-24-00029-CR
EIGHTH COURT OF APPEALS
EL PASO, TEXAS
11/5/2024 10:18 AM
ELIZABETH G. FLORES
CLERK

**No. 08-24-00029-CR**

**In the Eighth Court of Appeals**
**El Paso, Texas**

FILED IN
8th COURT OF APPEALS
EL PASO, TEXAS

11/5/2024 10:18:16 AM

ELIZABETH G. FLORES
Clerk

_____

**Jilson Duban Avelar-Rodriguez,**
*Appellant*
v.
**The State of Texas,**
*Appellee*

_____

**On Appeal From**
**The 226th Judicial District Court**
**Of Bexar County, Texas**
**Cause Number 2020-CR-2721**

_____

**Brief for the State**

_____

**Joe D. Gonzales**
**Criminal District Attorney**
**Bexar County, Texas**

**Eric R. Rodriguez**
**Oral Argument**    **Assistant Criminal District Attorney**
**Not Requested**    **Bexar County, Texas**
**Paul Elizondo Tower**
**101 W. Nueva Street**
**San Antonio, Texas 78205**
**Phone: (210) 335-2411**
**Email: e.rodriguez@bexar.org**
**State Bar No. 24114903**

***Attorneys for the State of Texas***

# Table of Contents

Table of Contents..............................................................................2
Index of Authorities ........................................................................3
Statement of the Case .....................................................................5
Statement Regarding Oral Argument ...........................................6
Statement of Facts...........................................................................7
Summary of the Argument.............................................................8
Argument..........................................................................................9

I. Avelar-Rodriguez's argument on appeal focuses on whether his statement was knowingly, intelligently, and voluntarily given. This point of error does not comport with the objection raised at the trial court and is therefore not preserved. ..............9

I.A. The trial court would have properly found that the statement was knowingly, voluntarily, and intelligently made if the validity of the waiver was challenged..............................................................12

I.B. If the statement was admitted in error, the strength of the evidence against Avelar-Rodriguez shows that the error was harmless beyond a reasonable doubt. .............................................18

II. The Sixth Amendment is offense-specific, so the officers investigating the murders were not required to find if Avelar-Rodriguez was represented by counsel for an offense he had not yet been charged with.................................................................22

III. Counsel for Avelar-Rodriguez was not ineffective, because the record shows his statement was knowingly, intelligently, and voluntarily made.................................................................24

Prayer.............................................................................................27
Certificate of Compliance and Service.........................................28

# Index of Authorities

## Cases

*Andrews v. State,*
159 S.W.3d 98 (Tex. Crim. App. 2005).....................................................25

*Bridge v. State,*
726 S.W.2d 558 (Tex. Crim. App. 1986)..................................................25

*Campbell v. State,*
325 S.W.3d 223 (Tex. App.—Fort Worth 2010, no pet.) ........................18

*Carmona v. State,*
941 S.W.2d 949 (Tex. Crim. App. 1997)..................................................11

*Clay v. State,*
240 S.W.3d 895 (Tex. Crim. App. 2007)..................................................18

*Colorado v. Connelly,*
479 U.S. 157 (1986) ..................................................................................12

*Creager v. State,*
952 S.W.2d 852 (Tex. Crim. App. 1997).....................................13, 15, 16

*Dunn v. State,*
721 S.W.2d 325 (Tex. Crim. App. 1986)..................................................15

*Ex parte Martinez,*
330 S.W.3d 891 (Tex. Crim. App. 2011)..................................................26

*Guzman v. State,*
955 S.W.2d 85 (Tex. Crim. App. 1997)....................................................13

*Hartfield v. State,*
28 S.W.3d 69 (Tex. App.—Texarkana 2000, pet. ref'd) ..........................11

*Jackson v. State,*
973 S.W.2d 954 (Tex. Crim. App. 1998)..................................................24

*Janecka v. State,*
937 S.W.2d 456 (Tex. Crim. App. 1996)..................................................25

*Jones v. State,*
119 S.W.3d 766 (Tex. Crim. App. 2003)..................................................18

*Joseph v. State,*
309 S.W.3d 20 (Tex. Crim. App. 2010).............................................12, 15

*Lopez v. State,*
343 S.W.3d 137 (Tex. Crim. App. 2011)..................................................25

*McFarland v. State,*
928 S.W.2d 482 (Tex. Crim. App. 1996)..................................................24

*Moran v. Burbine,*

475 U.S. 412 (1986) ...................................................................12

*Muniz v. State,*
851 S.W.2d 238 (Tex. Crim. App. 1993)...................................17

*Rubalcado v. State,*
424 S.W.3d 560 (Tex. Crim. App. 2014)...................................22

*Salmas v. State,*
163 S.W.3d 734 (Tex. Crim. App. 2005)...................................24

*Sherman v. State,*
532 S.W.2d 634 (Tex. Crim. App. 1976)...................................16

*State v. Dixon,*
206 S.W.3d 587 (Tex. Crim. App. 2006)...................................13

*Strickland v. Washington,*
466 U.S. 668 (1984) .............................................................24, 25

*Swain v. State,*
181 S.W.3d 359 (Tex. Crim. App. 2005)...................................11

*Swearingen v. State,*
101 S.W.3d 89 (Tex. Crim. App. 2003)...................................18

*Thompson v. State,*
9 S.W.3d 808 (Tex. Crim. App. 1999)...................................24

*Wesbrook v. State,*
29 S.W.3d 103 (Tex. Crim. App. 2000)...................................21

## Statutes

Tex. Code Crim. Proc. art. 38.22 ............................................ 10, 12, 16
Tex. Penal Code § 12.31 .......................................................17
Tex. Penal Code § 19.03 .......................................................17

## Rules

Tex. R. App. P. 33.1 ...........................................................10
Tex. R. App. P. 38.1 ...........................................................18
Tex. R. App. P. 38.2 .............................................................7
Tex. R. App. P. 44.2 ...........................................................18

## Statement of the Case

Avelar-Rodriguez was charged by indictment with three counts of capital murder. CR 10. After a trial by jury, Avelar-Rodriguez was convicted. CR 374. He was sentenced by the jury to life without parole in the Texas Department of Criminal Justice. CR 374. Avelar-Rodriguez timely filed notice of appeal. CR 367.

## Statement Regarding Oral Argument

The issues in this case are readily resolved by the applicable statutes and case law. The State therefore submits that oral argument will not aid this Court in its judgment.

## Statement of Facts

The State challenges the factual assertions contained in Avelar-Rodriguez's brief. *See* Tex. R. App. P. 38.2(a)(1)(B). The State will supply pertinent facts supported with record references within its response to Avelar-Rodriguez's points of error.

## Summary of the Argument

Avelar-Rodriguez failed to preserve an objection that his statement was knowingly, intelligently, and voluntarily made. Even if it were, the record affirmatively shows that Avelar-Rodriguez's statement was so made.

Avelar-Rodriguez appears to concede that the Sixth Amendment did not apply to his interrogation, because it is offense-specific and formal proceedings for the capital murder had not yet initiated at the time of the interrogation.

Trial counsel was not ineffective for failing to object to the voluntariness of Avelar-Rodriguez's statement, because the statement was knowingly, intelligently, and voluntarily made.

<u>**Argument**</u>

**I. Avelar-Rodriguez's argument on appeal focuses on whether his statement was knowingly, intelligently, and voluntarily given. This point of error does not comport with the objection raised at the trial court and is therefore not preserved.**

In his first point of error, Avelar-Rodriguez argues that the trial court erred by denying his motion to suppress his statement. Avelar-Rodriguez's Brief, p. 14. On appeal, he challenges whether the statement was knowingly, voluntarily, and intelligently made.

This point of error does not reflect the objection made to the trial court. At the motion to suppress hearing, both parties understood that the statement was given during a custodial interrogation.[1] 5RR 6–7. The sole question on his motion to suppress was whether the fact that Avelar-Rodriguez was represented by an immigration attorney when he gave his statement violated his Sixth Amendment right to counsel. 5RR 5–6. The video was admitted for purposes of the pretrial hearing as State's Exhibit 2. The video was offered and admitted at trial as State's Exhibit 77. When it was offered and admitted Avelar-Rodriguez made

---

[1] "Okay. Judge, since the recording itself and the *Miranda* warning therein is not an issue, we introduce it for the Court's perusal at the Court's leisure, but we won't be publishing and going through it, since it's not really the point of contention, if that's okay with the Court." 5RR 19.

9

the same objection and that objection only. 8RR 138–39.[2] When the exhibit was published through Detective Duke, Avelar-Rodriguez again made the same objection. 9RR 56. Avelar-Rodriguez even implicitly admits twice in his brief that this objection was not preserved below. First, in this point of error, he states, "There was no determination of whether the *Miranda* waiver was intelligently and voluntarily [*sic*], nor whether the statements Avelar gave were voluntary under the Due Process Clause." Avelar-Rodriguez's Brief, p. 21. Second, he argues later in his brief that counsel was ineffective for failing to raise the issue of the validity of the *Miranda* waiver at the trial court. *Id.* at p. 35.

Even more telling that this was not raised below is that there are no findings of fact or conclusions of law present in the record. When the question of voluntariness is raised, the trial court must make an independent finding in the absence of the jury as to whether the statement was made under voluntary conditions. Tex. Code Crim. Proc. art. 38.22 § 6. Accordingly, because the objection on appeal does not comport with the objection made at trial, he presents nothing for this Court's review. Tex. R. App. P. 33.1; *Carmona v. State*, 941 S.W.2d 949, 957 (Tex. Crim.

---

[2] "We renew all of the objections that we made at the motion to suppress hearing."

10

App. 1997) (point of error must comport with objection made at trial); *Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005); *Hartfield v. State*, 28 S.W.3d 69, 72 (Tex. App.—Texarkana 2000, pet. ref'd) (appellant waived voluntariness point of error by failing to raise it at the trial court).

*I.A. The trial court would have properly found that the statement was knowingly, voluntarily, and intelligently made if the validity of the waiver was challenged.*

Nevertheless, the State will address this point of error. Article 38.22 governs the admissibility of a statement to protect the privilege against self-incrimination. Tex. Code Crim. Proc. art. 38.22[3]; *Joseph v. State*, 309 S.W.3d 20, 23 (Tex. Crim. App. 2010). The face of the statement must show that the statement was knowingly, intelligently, and voluntarily made. Tex. Code Crim. Proc. art. 38.22, § 2(b). The State has the burden to show that the statement was so given, and the waiver must be proven by a preponderance of the evidence. *Joseph*, 309 S.W.3d at 24; *Colorado v. Connelly*, 479 U.S. 157, 168 (1986).

A waiver is voluntary when it is the product of a free and deliberate choice rather than intimidation, coercion, or deception. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). The waiver must also be made with full awareness of the nature of the right being abandoned and the conse-

---

[3] The rule disallows the use of a defendant's statement unless it is shown on the face of the statement that he received the following warnings: (1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial; (2) any statement he makes may be used as evidence against him in court; (3) he has the right to have a lawyer present to advise him prior to and during any questioning; (4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and (5) he has the right to terminate the interview at any time.

quences of the decision to abandon it. The validity of a waiver is determined by considering the totality of the circumstances under which the statement was obtained. *Creager v. State*, 952 S.W.2d 852, 855 (Tex. Crim. App. 1997) (citing *Haynes v. Washington*, 373 U.S. 503 (1963)).

The trial court's decision is reviewed for an abuse of discretion. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). If the trial court's decision falls within the "zone of reasonable disagreement," is reasonably supported by the record, and correct under any theory of law applicable to the case, it will be upheld. *State v. Dixon*, 206 S.W.3d 587, 890 (Tex. Crim. App. 2006).

The record affirmatively shows that Avelar-Rodriguez's statement was knowingly, voluntarily, and intelligently given. The full version of the video was introduced for purposes of the hearing as State's Exhibit 2.[4] In the video, Detective Duke speaks to Avelar-Rodriguez through Agent Ibarra, serving as a translator. *See* 5RR 16. Detective Duke acknowledges that Avelar-Rodriguez is in custody and he needs to receive his *Miranda* rights. 6:25–6:40. After a short explanation, Agent Ibarra begins to read the statutory warning card. *Id.* at 7:10–8:16; CR

---

[4] The redacted written translation of the interview was admitted and published to the jury as State's Exhibit 112. 8RR 52. The full written translation is in both the Clerk's Record and admitted for record purposes as 112A.

13

169. Importantly, Agent Ibarra properly covers all of the statutory warnings. Avelar-Rodriguez is asked if he understands these rights, and he responds "Yes." *Id.* at 8:17; CR 169. He does not invoke his right to stay silent or his right to an attorney and continues talking with Detective Duke and Agent Ibarra.

It appears from his brief that Avelar-Rodriguez is trying to argue that both statements made by Agent Ibarra and Detective Duke compounded to form a sort of coercive threat that rendered the waiver of his rights invalid. First, he alleges that Special Agent Joe Ibarra's statement "warn you of the consequences of using these rights" told him that there would be consequences if he decided to exercise his rights. Avelar-Rodriguez's Brief, p. 21. Second, he alleges that Detective Mark Duke's statement ". . .I am trying to figure out if there was a good reason, sometimes it is the difference in being put to death, or life in prison, or maybe thirty years in prison instead of life. . ." was a threat. Avelar-Rodriguez argues that these two statements rendered his waiver invalid. Avelar-Rodriguez's Brief, p. 21.

Avelar-Rodriguez analogizes the statement "warn you of the consequences of using those rights" to *Dunn*, which affirmed a per se rule of

14

inadmissibility for improper warnings. *Dunn v. State*, 721 S.W.2d 325, 342 (Tex. Crim. App. 1986). Here, the investigating officer, while warning Dunn, told him that his statement could be used "for or against him" while giving him the statutory warnings. *Id.* at 341. This error did not comply with the statutory requirements and thus rendered Dunn's statement involuntary. *Id.* at 342. But this per se rule was abrogated later by the Court of Criminal Appeals in *Creager*. Here, the Court recognized that the per se rule of admissibility only applies to the statutory warnings themselves. *See Creager*, 952 S.W.2d at 856. If the statutory warnings are complied with, then the totality of the circumstances approach applies for review. *Id.* at 856.

The record does not bear whether Agent Ibarra even made a mistake. The video depicts that Agent Ibarra is reading from a standardized translation card which officers would generally carry in these situations. *See* State's Exhibit 2 @ 7:15. It is unclear from the record whether this statement was a departure from the translated introduction to the warnings or was correct. What courts are generally concerned with is that a defendant waives his rights with full awareness of the consequences of abandoning his rights. *See Joseph*, 309 S.W.3d at 25. But

15

even if it were a mistake, the portion that Agent Ibarra misspeaks on is not part of *the actual statutory warnings*. *See* Tex. Code Crim. Proc. art. 38.22 § 2(a). It is simply an introductory phrase before the actual statutory warnings begin. Therefore, because Avelar-Rodriguez heard the correct warnings in strict compliance with the statute, the totality of the circumstances approach still applies. *Creager*, 952 S.W.2d at 856. And there is nothing in the record to indicate that this statement prevented Avelar-Rodriguez from being fully aware of the consequences of waiving his rights.

Additionally, Avelar-Rodriguez argues that Detective Duke's statements were "perceived threats." Obviously, a threat to use the death penalty on a suspect unless they give a statement is coercive and will render a statement involuntary. *See Sherman v. State*, 532 S.W.2d 634, 636 (Tex. Crim. App. 1976) (statement signed after investigator convinced suspect he would receive the death penalty if he did not sign was invalid waiver of rights). But nothing in the record shows that such threats were made. Detective Duke's statement was made in the context of potential punishments. In *Muniz*, the Court of Criminal Appeals noted that the statement that leniency is sometimes shown when a de-

16

fendant confesses is "simply a statement of fact," and not a promise to induce a statement. *Muniz v. State*, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993). Similarly, Detective Duke's statement was based in truth about the law. The offense of capital murder carries a sentence of life in prison without parole or the death penalty, or the possibility of a lesser included offense with a lighter sentence if the jury so decides. Tex. Penal Code § 19.03 (b), (c); Tex. Penal Code § 12.31.

Ultimately, the record Avelar-Rodriguez brings forth on appeal is insufficient to show that the trial court abused its discretion in ruling that his statement was admissible. The totality of the circumstances show that Avelar-Rodriguez knowingly, intelligently, and voluntarily waived his rights.

*I.B. If the statement was admitted in error, the strength of the evidence against Avelar-Rodriguez shows that the error was harmless beyond a reasonable doubt.*

If the admission of Avelar-Rodriguez's statement was error, the error is reviewed under the constitutional error standard.[5] Tex. R. App. P. 44.2(a). Under this standard, the reviewing court must reverse unless it determines beyond a reasonable doubt that the error did not contribute to the conviction. *Id.* This rule covers both violations of *Miranda* and Article 38.22. *See Campbell v. State*, 325 S.W.3d 223, 239 (Tex. App.—Fort Worth 2010, no pet.). Constitutional error does not contribute to the conviction if the verdict "would have been the same absent the error." *Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007). In the context of a *Miranda* error, the reviewing court must "judge the magnitude of the error in light of the evidence as a whole to determine the degree of prejudice to the defendant resulting from that error." *Jones v. State*, 119 S.W.3d 766, 777 (Tex. Crim. App. 2003) (quoting *U.S. v. Polanco*, 93 F.3d 555, 562–63 (9th Cir. 1996)).

---

[5] By applying the wrong harm standard Avelar-Rodriguez has inadequately briefed constitutional harmless error. Tex. R. App. P. 38.1(i); *Swearingen v. State*, 101 S.W.3d 89, 100 (Tex. Crim. App. 2003). The State will argue the record under this standard anyway because Rule 44.2(a) covers both *Miranda* and Article 38.22.

Avelar-Rodriguez describes the evidence in this case as "circumstantial." Avelar-Rodriguez's Brief, p. 29. To an extent, he is correct. No DNA, scientific or direct evidence tied him to the murders. But this was nevertheless an unusually strong circumstantial case.

What the record does show is that Avelar-Rodriguez had sexual relationships with two women who were able to connect him to damning items of evidence they saw him with immediately after the murders. First, Valerie Rocha testified that her and Avelar-Rodriguez were still in a relationship around September 2018. 7RR 171; 175. On the night of the 29th, Rocha and Avelar-Rodriguez were doing their usual "ritual" of watching Netflix before bed. 7RR 176. When she woke up the next morning, he was not there. 7RR 177. She called him, and he told her he was at a friend's house. 7RR 177. She saw him again later that morning. 7RR 178. At the time, they shared a single car, so the morning he was gone she did not have a car. 7RR 198. When police were conducting their investigation, she allowed the officers to search the apartment twice. 7RR 179. The first time the apartment was searched, they found ammunition and a holster. 7RR 183–84. The second time officers searched, they found a black and silver lockbox. 7RR 180. Rocha was on

19

probation and was not allowed to have firearms, so she did not want firearms in the home and had previously discussed that issue with Avelar-Rodriguez. 7RR 183.

Second, Melissa Cortez testified that she was in a sexual relationship with Avelar-Rodriguez around the time of September 30, 2018. 8RR 9; 12. The two would often go to the apartment where he lived to have sex. 8RR 16. Around September 30th, he came to her house and took a shower. 8RR 18. He put his clothes in a plastic bag and brought a silver and black lockbox with him. 8RR 19; State's Exhibit 106. He opened the box and was "upset." 8RR 20–21. He was looking for drugs or money but only found a prescription methadone bottle with the name "Julia" on it. Cortez kept the bottle and gave it to Detective Duke. 8RR 23–24. She also gave him the plastic bag of clothes. 8RR 24; State's Exhibit 83. She identified the holster as Avelar-Rodriguez's. 8RR 25; State's Exhibit 99.

Detective Duke further explained the significance of these and other items recovered from the apartment. During the search, Detective Duke recovered a box of Hornady brand bullets, which contained Browning and Winchester brand bullets as well. 9RR 12–15. The Hornady brand bullets were silver in color, and six were left in the box. 9RR 15. These

bullets matched the spent shell casings that were recovered at the crime scene. 9RR 15–16; State's Exhibit 30; 32. The Browning bullet recovered in State's Exhibit 35 also matched the bullets in the box recovered from Avelar-Rodriguez's apartment. 9RR 16–17; State's Exhibit 35. Detective Duke also found blue latex gloves used for cleaning in the apartment that matched a portion of a glove recovered at the crime scene and in the bag of clothes. 9RR 19–21. The prescription bottle Cortez turned over matched Julia Wright's name. 9RR 29. Cortez first saw the prescription bottle the morning after the murders happened. 9RR 31. The prescription was dispensed to Wright two days before her murder. 9RR 34. The lockbox the prescription was found in matched Wright's patient number and was the code to get into the box. 9RR 40–41.

The record shows that the importance of his statement was minimal in comparison to all the other evidence strongly connecting Avelar-Rodriguez to the murders. In light of the evidence as a whole, the statement alone would not have moved the jury from a state of non-persuasion to a state of persuasion. *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000). Accordingly, if the decision was error, it was harmless beyond a reasonable doubt.

**II. The Sixth Amendment is offense-specific, so the officers investigating the murders were not required to find if Avelar-Rodriguez was represented by counsel for an offense he had not yet been charged with.**

Avelar-Rodriguez next raises the Sixth Amendment issue that was raised at the trial court, but appears to concede that this legal theory was inapplicable and the trial court was correct in admitting the evidence over this specific objection. *See* Avelar-Rodriguez's Brief, p. 32.

The Sixth Amendment right to counsel does not apply until it has attached, and it attaches when the prosecution commences. *Rubalcado v. State*, 424 S.W.3d 560, 570 (Tex. Crim. App. 2014). The record showed that Avelar-Rodriguez was released from ICE custody in 2015 and was supposed to live with his uncle. 5RR 14. He had moved without notifying federal officials and was arrested for a new offense, so he was brought back into ICE's custody. 5RR 15; 20. These immigration proceedings are administrative and civil in nature. 5RR 20.

Before his interrogation, Agent Ibarra checked the "G-28" form to see if Avelar-Rodriguez was represented by an attorney, and the portion of the form that would show this information was blank. 5RR 21. Even if he had an immigration attorney assigned, Agent Ibarra's usual practice is to ask the government's attorneys to give the immigration attorney a

courtesy notification that the interview would be conducted but conduct it anyway. 5RR 21–22.

The record shows that Avelar-Rodriguez had not been charged with the murders at the time Agent Ibarra and Detective Duke conducted their interrogation. Since the Sixth Amendment is offense specific, there was no error, because no proceedings against Avelar-Rodriguez had begun for the capital murder case.

**III. Counsel for Avelar-Rodriguez was not ineffective, because the record shows his statement was knowingly, intelligently, and voluntarily made.**

Avelar-Rodriguez last argues that he received ineffective assistance of counsel. An appellant complaining of ineffective assistance of counsel must show that trial counsel was deficient, and that the harm caused by that deficiency undermines confidence in the outcome of the trial. *Strickland v. Washington,* 466 U.S. 668, 689 (1984). The appellate court reviews the record with a strong presumption that trial counsel's actions fell within the proper range of reasonableness, and his decisions were motivated by sound trial strategy. *Salmas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). To defeat this presumption, the allegations of ineffectiveness "must be firmly founded in the record. . . ." *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996).

But on direct appeal, a claim of ineffective assistance of counsel carries a "substantial risk of failure." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). In most cases, the record on direct appeal is underdeveloped and cannot adequately reflect the deficiencies of counsel at trial. *Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998).

Proof of prejudice requires a showing that but for trial counsel's errors, "the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695. Merely showing that counsel's errors had some conceivable effect on the proceedings is inadequate. *Id.* at 693; *see also Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011) (right to effective counsel does not mean a defendant has the right to errorless counsel). Examples of prejudice include unfair surprise, an inability to effectively cross-examine witnesses, and the inability to elicit crucial testimony. *Janecka v. State*, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996). When addressing the prejudice prong, the reviewing court should examine counsel's errors in the context of the entire record. *Bridge v. State*, 726 S.W.2d 558, 571 (Tex. Crim. App. 1986).

Avelar-Rodriguez argues that trial counsel was ineffective for failing to object to the admissibility of his statement on the grounds that the statement was involuntary. It is "extremely unusual" to find ineffectiveness on direct appeal based on failure to object and happens only when the record alone contains no "reasonable trial strategy for failing to object." *See Andrews v. State*, 159 S.W.3d 98, 102–03 (Tex. Crim. App. 2005). Proving deficiency based on the failure to object requires a

showing that the trial court would have erred in overruling the objection. *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011).

To avoid belaboring this Court with another recitation of why the statement was knowingly, intelligently, and voluntarily made, the State will rest on its argument made above. The record affirmatively shows that Avelar-Rodriguez knowingly, intelligently, and voluntarily waived his rights before giving his statement to Detective Duke and Agent Ibarra. Therefore, the record that Avelar-Rodriguez brings forth is insufficient to rebut the presumption of reasonable assistance.

## Prayer

The judgment of the trial court should, in all things, be AFFIRMED.

Respectfully submitted,

Joe D. Gonzales
Criminal District Attorney
Bexar County, Texas

/s/Eric R. Rodriguez
Eric R. Rodriguez
Assistant Criminal District Attorney
Bexar County, Texas
Paul Elizondo Tower
101 W. Nueva Street
San Antonio, Texas 78205
Phone: (210) 335-2411
Email: e.rodriguez@bexar.org
State Bar No. 24114903

*Attorneys for the State*

## Certificate of Compliance and Service

I, Eric R. Rodriguez, certify that the total number of words in the State's brief is 3,664. I also certify that a true and correct copy of this brief was emailed to appellant Jilson Duban Avelar-Rodriguez's attorney, Rafael Leal, via E-File, on this the 5th day of November, 2024.

/s/ Eric R. Rodriguez
Eric R. Rodriguez
Assistant Criminal District Attorney
*Attorney for the State*

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Bexar County DA Appeals Division on behalf of Eric Rodriguez
Bar No. 24114903
DAAppealsDivision@bexar.org
Envelope ID: 93938156
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: States Brief
Status as of 11/5/2024 10:36 AM MST

Associated Case Party: JILSONDUBANAVELAR-RODRIGUEZ

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| RAFAEL LEAL | | rafaellealaw@gmail.com | 11/5/2024 10:18:16 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Joe Gonzalez | | daappealsdivision@bexar.org | 11/5/2024 10:18:16 AM | SENT |

Associated Case Party: State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Bexar County Criminal District Attorney (Official) Appeals | | DAAppealsDivision@bexar.org | 11/5/2024 10:18:16 AM | SENT |
| Eric Rodriguez | | e.rodriguez@bexar.org | 11/5/2024 10:18:16 AM | SENT |